Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 17, 2003        Decided May 2, 2003

No. 02-5154

JUDICIAL WATCH, INC.,
APPELLANT

v.

CHARLES O. ROSSOTTI,
COMMISSIONER, INTERNAL REVENUE SERVICE AND
DEPARTMENT OF TREASURY,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv01612)

———

*Larry E. Klayman* argued the cause and filed the briefs for appellant.

*Gretchen M. Wolfinger*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *Jonathan S. Cohen*, Attorney, U.S. Department of Justice.

Before: SENTELLE, HENDERSON and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant, a non-profit organization, argues that it qualifies for a fee waiver under the Freedom of Information Act because disclosure of the requested documents regarding a conflict-of-interest waiver received by the Commissioner of the Internal Revenue Service would serve the "public interest." The district court thought appellant's request too "general and formulaic" to satisfy FOIA. We disagree. Following Congress's directive that FOIA's fee waiver requirement be liberally construed, and finding appellant's request both reasonably specific and non-conclusory—all that our case law requires—we reverse.

## I.

Intended to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), the Freedom of Information Act requires federal agencies to disclose information upon request unless the statute expressly exempts the information from disclosure. 5 U.S.C. § 552 *et seq*. Although requesters must pay reasonable charges associated with processing their requests, 5 U.S.C. § 552(a), FOIA section 552(a)(4)(A)(iii) requires agencies to waive fees for requesters able to demonstrate that "disclosure of the information is in the public interest." Requesters may seek judicial review of denials of fee waivers only after exhausting specified administrative remedies. 5 U.S.C. § 552(a)(6)(A)(i), (ii); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990) (holding that FOIA administrative exhaustion requirement is jurisdictional). A requester is considered to have constructively exhausted administrative remedies and may seek judicial review immediately if (with one exception not relevant here) the agency fails

to answer the request within twenty days. 5 U.S.C. § 552(a)(6)(c). If the agency responds to the request after the twenty-day statutory window, but before the requester files suit, the administrative exhaustion requirement still applies. *Oglesby*, 920 F.2d at 64–65.

On June 6, 2001, appellant, Judicial Watch, Inc., "a nonprofit, non-partisan, public interest organization committed to fighting corruption by government officials," Appellant's Br. at 2, sent virtually identical FOIA requests to the Internal Revenue Service and the Department of the Treasury. The two requests sought information about former Internal Revenue Service Commissioner Charles Rossotti's relationship with American Management Systems, Inc., a company he cofounded and in which he retained stock; the company's contract with the IRS; and Rossotti's receipt of a conflict-of-interest waiver from Treasury. Specifically, the letters requested information concerning:

1. IRS Commissioner Charles O. Rossotti's December 11, 2000 waiver, executed by former Deputy Treasury Secretary Stuart Eizenstadt, concerning the "Custodial Accounting Project" (hereinafter "CAP").

2. IRS Commissioner Charles O. Rossotti and American Management Systems, Inc. (hereinafter "AMS").

3. Decision(s) concerning CAP that have or would have a direct and predictable effect on IRS Commissioner Charles O. Rossotti's financial interest in AMS.

4. The decision to grant IRS Commissioner Charles O. Rossotti a conflict-of-interest waiver on December 11, 2000.

5. Communications between IRS Commissioner Charles O. Rossotti, former Deputy Treasury Secretary Stuart Eizenstadt, and/or former Treasury Department Assistant General Counsel Kenneth

Schmalzbach concerning the December 11, 2000 conflict-of-interest waiver and/or CAP, and/or AMS.

6. The decision to grant AMS the contract for an automated financial management system and software supporting CAP.

Claiming that disclosing such information would serve the "public interest," 5 U.S.C. § 552(a)(4)(A)(iii), Judicial Watch sought a fee waiver in connection with each request. The IRS replied by letter dated July 5. Without addressing the fee waiver request, the July 5 letter asked Judicial Watch for additional time to respond. The letter explained that if Judicial Watch did not agree to the extension, the organization could seek judicial review. Judicial Watch never answered.

Treasury responded to Judicial Watch's fee waiver request with multiple letters, only two of which are relevant here. By letter dated July 10, Treasury asked for additional information from Judicial Watch regarding its waiver request. Judicial Watch never replied, so on August 10, Treasury informed Judicial Watch that its request would be deemed withdrawn within thirty days unless it complied with Treasury's advance fee payment requirement. Again, Judicial Watch did not respond, and Treasury administratively closed the matter.

On July 25, Judicial Watch filed suit in the U.S. District Court for the District of Columbia seeking to compel the two agencies to grant fee waivers. In an opinion addressing both fee waiver requests, the district court granted summary judgment for the IRS and dismissed the complaint against Treasury. *Judicial Watch v. Rossotti*, No. 01–1612 (D.D.C. Mar. 18, 2002). With respect to Treasury, the court found that Judicial Watch failed to exhaust its administrative remedies because the Department's July 10 letter, sent before Judicial Watch filed suit, constituted a substantive response. Addressing the merits of the IRS request, the district court characterized Judicial Watch's June 6 letter as "general and

formulaic," finding that it fell "far short" of demonstrating that release of the information would be in the public interest. *Id.*, mem. op. at 8.

Judicial Watch appeals. We review the district court's decision to grant summary judgment and to dismiss the complaint de novo. *Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003). We also review de novo an agency's denial of a fee waiver request, but our review is "limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii).

## II.

Judicial Watch challenges the district court's grant of summary judgment to the IRS and dismissal of its complaint against Treasury. The government defends the district court's reason for granting summary judgment to the IRS, but offers a new justification for dismissing the complaint against Treasury. *See Dimond v. Dist. of Columbia*, 792 F.2d 179, 187 (D.C. Cir. 1986) (noting that appellate court can consider any argument on appeal that supports the district court's judgment). Citing Treasury regulations providing that FOIA's twenty-day time limit does not apply to requests that fail to "conform in every respect" to the department's regulations, 31 C.F.R. § 1.5(a)(1), and that requests are only "considered to have been received on the date on which a complete request . . . has been received," *id.* at § 1.5(f), the government argues that Judicial Watch failed to constructively exhaust its administrative remedies both because FOIA's twenty-day statutory window did not apply to its nonconforming request and because Judicial Watch's incomplete request was never considered to be "received." According to the government, our disposition of Judicial Watch's case against Treasury therefore turns on the adequacy of its June 6 letter: If the letter did not demonstrate Judicial Watch's eligibility for a fee waiver, then Treasury had no obligation to respond and Judicial Watch failed to exhaust its administrative remedies; but if Judicial Watch qualified for a fee waiver, then it constructively exhausted its administrative remedies because Treasury did not respond substantively within twenty days.

Given the district court's reason for granting summary judgment to the IRS—that Judicial Watch failed to qualify for a fee waiver—both cases now turn on whether the June 6 letters demonstrate that disclosure of the information would serve the "public interest." 5 U.S.C. § 552(a)(4)(A)(iii).

In order to demonstrate that a FOIA request is in the public interest, and therefore eligible for a fee waiver, the requester must show that disclosure of the information "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Because the government does not argue that the requests serve Judicial Watch's "commercial interests," this case turns on whether disclosure of the information is "likely to contribute significantly to public understanding of the [government's] operations or activities." On this issue, the IRS's implementing regulation essentially repeats the statute's language and includes the following non-exclusive list of factors the agency "shall consider":

> (A) Whether the subject of the releasable records concerns the agency's operations or activities;
>
> (B) Whether the releasable records are likely to contribute to an understanding of the agency's operations or activities;
>
> (C) Whether the releasable records are likely to contribute to the general public's understanding of the agency's operations or activities (*e.g.*, how will the requester convey the information to the general public);
>
> (D) The significance of the contribution to the general public's understanding of the agency's operations or activities (*e.g.*, is the information contained in the releasable records already available to the general public).

26 C.F.R. § 601.702(f)(2)(ii). Though phrased somewhat differently, Treasury's fee waiver regulation, 28 C.F.R.

§ 16.11(k)(2)(i)-(iv), is substantively identical, and the parties agree that our resolution of the IRS fee waiver request will therefore dispose of the Treasury request as well.

Under well-established case law, fee waiver requests must be made with "reasonable specificity," *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (per curiam) (internal quotation marks and citation omitted), and based on more than "conclusory allegations," *Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C. Cir. 1987). We are also mindful that Congress amended FOIA to ensure that it is " 'liberally construed in favor of waivers for noncommercial requesters.' " *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 CONG. REC. 27,190 (1986) (Sen. Leahy)).

In support of its fee waiver request to the IRS, Judicial Watch stated in its June 6 letter:

> Judicial Watch is a 501(c)(3) not-for-profit public interest organization. One of its purposes is to provide the public with information which exposes government activities that are contrary to law. Judicial Watch is, in effect, an educational foundation, as well as a law firm, which uses several mechanisms for the dissemination of the information it acquires, and operates to ensure that this information will be made available to the public on a daily basis.

After listing the multiple mechanisms Judicial Watch employs to disseminate information it obtains under FOIA, the letter explains that "there is an unequivocal public interest served by revealing the aforementioned documents"; "[t]he American people should be made aware of, among other things, reports, investigations, decisions, waivers and findings of fact concerning conflicts-of-interest by high government officials and heads of various agencies and departments, in this case, IRS Commissioner Charles O. Rossotti"; and "[r]elease of the information will promote confidence in our Constitutional Republic, and contribute to furthering the integrity of the American national government by deterring and/or sanctioning corrupt activities."

The government argues that Judicial Watch's "justification for a fee waiver consisted primarily of vague, conclusory statements that were not sufficiently specific for the IRS to determine whether a fee waiver was warranted." Appellees' Br. at 11. In particular, the government argues that Judicial Watch's request fails each of the four factors the agency uses to assess fee waiver requests. Because the government has organized its brief around these factors, we will organize our analysis around them as well. In doing so, however, we emphasize that we owe no particular deference to the IRS's interpretation of FOIA. *Tax Analysts v. Commissioner*, 117 F.3d 607, 613 (D.C. Cir. 1997) (noting that court "will not defer to an agency's view of FOIA's meaning").

Beginning with the first factor—that the request "concerns the Agency's operations or activities"—we disagree with the government's contention that Judicial Watch failed to "specifically identify the operations or activities of the IRS to which its FOIA request pertained." Appellees' Br. at 22. With "reasonable specificity"—all that FOIA requires, *Larson*, 843 F.2d at 1483—Judicial Watch sought documents regarding specified "operations and activities" of the IRS, i.e., a conflict-of-interest waiver executed by the Deputy Treasury Secretary for the Commissioner of the IRS, the Commissioner's relationship with a private company doing business with the IRS, and decisions by the IRS involving the private company. *See supra* p. 4. We cannot imagine what else Judicial Watch could have said to satisfy the government's appetite for specificity.

Nor do we see how Judicial Watch's request fails to "contribute to the public's understanding of the agencies' operations," the regulation's second factor. What could be more important to the public's understanding of IRS operations than knowing whether its commissioner awarded a government contract to a company he co-founded and in which he held stock? The government argues that "Judicial Watch stated nothing about the informative value of the information it requested," Appellees' Br. at 23, but the June 6 letter specifically explains that "the public is always well served when it knows how government activities, particularly mat-

ters touching on legal and ethical questions, have been conducted," and that "the information requested will be meaningfully informative in increasing public understanding of the IRS commissioner's involvement and interest in lucrative government contracts." At oral argument, government counsel complained that Judicial Watch provided no evidence that Rossotti actually had a conflict of interest. That may be true, but the question here is not whether Rossotti had such a conflict, but whether disclosure of the requested documents is likely to contribute to public understanding of IRS operations—a goal that disclosure will promote regardless of what the documents reveal. Contrary to the implications of the government's argument, the American people have as much interest in knowing that key IRS decisions are free from the taint of conflict of interest as they have in discovering that they are not.

Claiming that Judicial Watch failed to satisfy the third factor, the government argues that the organization never "state[d] that it intends to disseminate the information it has requested, and more importantly, how it intends to do so." Appellees' Br. at 23–24 (citing 26 C.F.R. § 601.702(f)(2)(ii)(C) (requesters must demonstrate how they will "convey the information to the general public")). In fact, however, the June 6 letter not only explains that Judicial Watch's mission is obtaining information under FOIA, but also lists nine ways in which it communicates collected information to the public: press releases; a newsletter with a monthly circulation of "over 300,000 copies nationwide"; a website on which people can view copies of documents and that has "logged up to 1,000,000 visitors in a single day"; an "Infonet" listserve with "over 60,000 subscribe[rs]" who receive daily updates on Judicial Watch lawsuits, FOIA requests, and investigations; congressional testimony; a nationally syndicated news and information television show Judicial Watch helps to produce; a Judicial Watch-produced weekly radio program which "airs nationwide on thirty-six radio stations and the Internet"; appearances by Judicial Watch employees on television and radio programs; and conferences organized by Judicial Watch. Judicial Watch might have added that it will use

these methods to publicize any information it obtains from this request, but the government points to nothing in FOIA, the IRS regulation, or our case law requiring such pointless specificity.

Judicial Watch's request contains considerably more detail regarding its ability to publicize disclosed information than did the defective request at issue in *Larson v. C.I.A.* In that case, we upheld a CIA fee waiver denial where, although the requester stated that he intended to distribute collected information to a newspaper, he "failed to identify the newspaper company to which he intended to release the requested information, his purpose for seeking the requested material, or his professional or personal contacts with any major newspaper companies." *Larson*, 843 F.2d at 1483. By contrast, Judicial Watch has explained, in detailed and non-conclusory terms—again, all that FOIA requires—exactly how and to whom it will disseminate the information it receives.

Finally, addressing the fourth factor, the government argues that Judicial Watch failed to show whether "the information contained in the releasable records [is] already available to the general public." 26 C.F.R. § 601.702(f)(2)(ii). According to the government, "[i]t is clear . . . that at least some of the information is public[ ] because Judicial Watch states that its request is based on news articles concerning the conflict of interest waiver." Appellees' Br. at 24 n.13. Although the June 6 letter does say that "this request is based, in part, on news articles by Mr. John Berlau that were reported in Insight Magazine," and although that article reports that "Insight has obtained a copy of that waiver," nothing in the record before us suggests that the waiver has been disclosed to anyone other than *Insight*. Moreover, Judicial Watch seeks considerably more than the waiver itself. Its June 6 letter requests "correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, and calendar or diary logs" relating to Rossotti's alleged conflict of interest and Treasury's decision to grant him a conflict-of-interest waiver.

At oral argument, counsel for Judicial Watch asserted that the government's response to its waiver request amounted to just the sort of "roadblock[ ] and technicalit[y]" that led Congress to liberalize the fee waiver provision. 132 CONG. REC. 31,415 (1986) (Sen. Leahy). We cannot disagree. Because Judicial Watch's June 6 request demonstrates with reasonable specificity that disclosure of the information sought will serve the public interest, we reverse the district court's grant of summary judgment to the IRS and, for the same reason, its dismissal of the complaint against Treasury.

*So ordered.*