**Gennifer FLOWERS, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**No. CIV.A.01–0763(RMU).**

United States District Court, District of Columbia.

March 11, 2004.

Larry Elliot Klayman, James F. Peterson, Paul J. Orfanedes, Judicial Watch, Inc., Washington, DC, for Plaintiff.

Stuart David Gibson, U.S. Attorney's Office, Washington, DC, for Defendant.

---

### MEMORANDUM OPINION

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S MOTION FOR DISCOVERY

URBINA, District Judge.

## I. INTRODUCTION

This case comes before the court on the defendant's motion for summary judgment and the plaintiff's motion for discovery. Plaintiff Gennifer Flowers brings suit against the Internal Revenue Service ("IRS" or "the defendant") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that the IRS unlawfully refused to disclose tax documents requested by the plaintiff. The defendant moves for summary judgment, contending that the court lacks subject-matter jurisdiction over the plaintiff's initial request and that the IRS fully complied with the plaintiff's perfected 2003 request. In response, the plaintiff moves for discovery. Because the plaintiff failed to exhaust her administrative remedies with regard to her initial request, the court may not review that request. As for the plaintiff's perfected request, because the defendant has demonstrated that its searches were reasonably calculated to uncover responsive documents, and because the plaintiff may not use FOIA discovery to conduct an investigation into the defendant's motivations, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for discovery.

## II. BACKGROUND[1]

On June 27, 2000, the plaintiff, a resident of Nevada, sent a letter to the director of the IRS Office of Disclosure

---

1. Pursuant to Local Civil Rule 56.1, the defendant submitted a statement of undisputed material facts. The plaintiff did not submit a statement of disputed material facts or otherwise contest the defendant's facts. Accordingly, the court treats the defendant's facts as admitted. LCvR 56.1; *Burke v. Gould,* 286 F.3d 513, 518 (D.C.Cir.2002).

requesting "[a]ny and all documents, including but not limited to files, that refer or relate in any way to Gennifer Flowers" pursuant to FOIA. Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶¶ 2–3; Compl. ¶ 5 & Ex. 1. In her letter, the plaintiff indicated that "the term 'document' is used in its broadest sense" and requested that the IRS send all responsive documents and any correspondence to her attorney at Judicial Watch, Inc. Def.'s Statement ¶¶ 3–4; Compl. Ex. 1.

On August 3, 2000, the IRS responded to the plaintiff's request via a letter advising her that "[i]n its present format, your letter meets some but not all of the requirements which constitute a valid [FOIA] request." Def.'s Statement ¶ 5; Summerlin Decl. Ex. 2. The IRS specified several shortcomings in the plaintiff's request. Def.'s Statement ¶¶ 6, 9; Summerlin Decl. Ex. 2. First, the IRS noted that the plaintiff's request failed to include a separate written authorization, signed and dated by the plaintiff, indicating her social security number, the identity of the person to whom disclosure was to be made, the type of information to be disclosed, and the taxable years covered by the information.[2] *Id.* Second, the IRS noted that because IRS district offices—rather than the National Office—maintain taxpayer files, the plaintiff should direct her request to the service center or district office associated with the particular return. *Id.* The IRS provided a telephone number for the plaintiff to call for assistance in determining the office to which she should address her request. *Id.* Third, the IRS described the plaintiff's request as "too broad to meet the FOIA requirement to adequately describe the records sought," and asked her to provide additional guidance on the information requested, the IRS function that might have responsive documents, the types of issues involved, and the time frame on which the IRS should focus its search. *Id.* Fourth, the IRS indicated that the plaintiff must fulfill the proof-of-identity requirement and could do so via notarized statement or sworn statement. *Id.* Finally, the IRS noted that the plaintiff must provide "a firm commitment to pay the fees for search and duplication" and an attestation regarding the applicable fee category. *Id.* The IRS closed by stating that it would keep the plaintiff's request open for 30 days to allow the plaintiff to perfect it, and provided a phone number and website for the plaintiff in case she had questions. Def.'s Statement ¶ 7; Summerlin Decl. Ex. 2.

The plaintiff did not perfect her request or otherwise respond to the IRS letter. Def.'s Statement ¶ 8. Instead, eight months after receiving the IRS letter, the plaintiff filed suit in this court. In her complaint, the plaintiff alleges that the IRS subjected her to retaliatory audits and other actions during the Clinton Administration from 1993 to 2001. Compl. ¶ 6. She seeks a declaration that the IRS' refusal to disclose the requested documents is unlawful, an order directing the IRS to make these documents available to the plaintiff, and a fee waiver. *Id.* at 2.

At the initial status conference, the court directed the parties to certify that they had met in an effort to resolve the procedural difficulties with the plaintiff's request, and scheduled a second status conference for January 16, 2003. Def.'s Statement ¶ 10. The parties met on December 27, 2002. *Id.* Subsequently, on January 10, 2003, the plaintiff submitted a perfected request seeking disclosure of

---

**2.** The IRS enclosed a copy of Form 8821, the authorization form commonly used to meet FOIA requirements. Summerlin Decl. Ex. 2.

five categories of documents dating back to 1992 from four IRS offices. *Id.* ¶¶ 10–11; Deamon Decl. Ex. 1.

The plaintiff's 2001 complaint and 2003 perfected request resulted in separate but overlapping IRS actions. First, in June 2001, after the plaintiff filed her complaint, the IRS general counsel directed the IRS Dallas disclosure office to identify and locate any records pertaining to the plaintiff. Def.'s Statement ¶ 18; Deamon Decl. ¶¶ 9–10, 12. The Dallas disclosure office used its Integrated Data Retrieval System ("IDRS") to produce transcripts pertaining to the plaintiff's account. Deamon Decl. ¶ 13. Second, in January 2003, the IRS National Office searched the IRS national headquarters[3] for responsive documents, while the Dallas disclosure office again used IDRS to search for documents responsive to the plaintiff's perfected request. *Id.* ¶¶ 5, 8; Def.'s Statement ¶¶ 13–15, 24–27; Baker Decl. ¶¶ 5–6; Williams Decl. ¶¶ 2–4; Cincotta Decl. ¶¶ 2, 5, 8–10.

The search of IRS national headquarters produced only a copy of the plaintiff's perfected request. Def.'s Statement ¶¶ 26–27; Cincotta Decl. ¶ 5. The search by the Dallas disclosure office produced IDRS transcripts revealing that during the specified time period, the IRS had conducted or contemplated audit activity on the plaintiff's tax returns twice—once on her 1990 return and once on her 1992 return. Def.'s Statement ¶¶ 13–15; Deamon Decl. ¶¶ 5, 8. With regard to the plaintiff's 1990 return, the transcripts indicated that the computer at the IRS Austin service center randomly selected the plaintiff's 1990 return for audit in 1992, but the IRS decided

not to conduct an audit after reviewing the return. Def.'s Statement ¶ 14; Deamon Decl. ¶ 6. Because the IRS did not conduct an audit, the IRS did not create an examination file for the plaintiff's 1990 return. *Id.* As for the 1992 return, the transcripts showed that the IRS selected the plaintiff's 1992 return for audit in 1993 based on an "information item"—defined as information either generated within the IRS or supplied by an external source—rather than random selection.[4] Deamon Decl. ¶ 7.

In an effort to retrieve the examination file associated with the plaintiff's 1993 audit, the Dallas disclosure office traced the file via document locator number to the IRS Austin service center. *Id.* ¶ 14; Def.'s Statement ¶ 18. In June 2001, the Dallas disclosure office asked the Austin service center to retrieve the file. *Id.* The Austin service center reported that because the file was more than eight years old, the center had sent the file to the National Archives and Records Administration's ("NARA") federal records center ("FRC") in Fort Worth for long-term storage. Def.'s Statement ¶ 19; Deamon Decl. ¶¶ 15, 18. The Austin service center therefore asked the Fort Worth FRC to search for the file, but the FRC indicated that the block of NARA records containing the plaintiff's file was missing. *Id.* In July 2001, the Dallas disclosure office reported back to the IRS general counsel with this information. Deamon Decl. ¶ 18. At the same time, the Dallas disclosure office told the general counsel that because IRS document-retention schedules for examination files require the files' destruction seven

---

3. Specifically, the IRS National Office searched the Congressional Correspondence and Quality Review Branch of the Office of Legislative Affairs and the National Headquarters Management and Finance Office. Baker Decl. ¶¶ 5–6; Williams Decl. ¶¶ 2–4; Cincotta Decl. ¶¶ 2, 5, 8–10.

4. The transcripts indicated that the IRS closed the plaintiff's examination file on June 13, 1994, three weeks after the plaintiff paid an additional $120 in income tax by agreement. Def.'s Statement ¶ 15; Deamon Decl. ¶ 7.

years after closing, the plaintiff's file would have been eligible for destruction as of June 2001. *Id.* ¶ 19 & Ex. 2.

In May 2002, the IRS general counsel again contacted the Dallas disclosure office, this time asking it to determine the exact date of the file's destruction. *Id.* ¶ 20. The Dallas disclosure office subsequently asked the Fort Worth FRC to go back and conduct a special search for the plaintiff's file. *Id.* ¶¶ 20–21; Def.'s Statement ¶ 20. This time the Fort Worth FRC reported that it had shipped the block of records in question to the FRC in Suitland, Maryland. *Id.* In turn, the Suitland FRC informed the Dallas disclosure office that NARA had destroyed the plaintiff's file on August 21, 2001. Def.'s Statement ¶¶ 20–21; Deamon Decl. ¶¶ 21–22 & Ex. 4.

Given the destruction of the plaintiff's file, the IRS could not produce the file or any documents placed in the file that may have referred to the information item prompting the plaintiff's 1993 audit. Def.'s Statement ¶¶ 21–22; Deamon Decl. ¶ 22. In an effort to locate any other records pertaining to the information item, the Dallas disclosure office asked the Austin service center, which maintains records of persons claiming rewards for providing the IRS with information about other taxpayers, to check for reward claims relating to the plaintiff. Def.'s Statement ¶ 22; Deamon Decl. ¶ 23. The Austin service center reported that it had no records of any such claim. *Id.* Accordingly, the only documents the IRS provided to the plaintiff in response to her perfected request were the IDRS transcripts. Def.'s Statement ¶ 23; Deamon Decl. ¶ 24.

In March 2003, the defendant filed a motion for summary judgment contending that the court lacks jurisdiction over the plaintiff's initial request and that the defendant fully complied with its obligations regarding the plaintiff's perfected request. Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 5–15. In response, the plaintiff filed a three-page opposition contending that summary judgment is inappropriate and requesting discovery regarding the defendant's search for documents and "why Plaintiff's administrative file was destroyed." Pl.'s Opp'n at 3. The court now addresses the defendant's motion for summary judgment and the plaintiff's motion for discovery.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. Legal Standards for FOIA Requests

#### 1. Exhaustion of Remedies

■ "Exhaustion of administrative remedies is generally required before seeking judicial review 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Wilbur v. Cent. Intelligence Agency,* 355 F.3d 675, 677 (D.C.Cir.2004) (quoting *Oglesby v. United States Dep't of Army,* 920 F.2d 57, 61 (D.C.Cir.1990)). In the FOIA context, the exhaustion requirement is a prudential consideration, not a jurisdictional prerequisite, and therefore a plaintiff's failure to exhaust does not deprive the court of subject-matter jurisdiction. *Id.* But as a prudential consideration, the exhaustion requirement may still bar judicial review if both (1) the administrative scheme at issue and (2) the purposes of exhaustion support such a bar. *Id.* (citing *Hidalgo v. Fed. Bureau of Investigation,* 344 F.3d 1256, 1258–59 (D.C.Cir.2003)). With regard to the first factor, the D.C. Circuit has concluded that FOIA's administrative scheme supports barring judicial review.[5] *Id.* (citing *Hidalgo,* 344 F.3d at 1259). As for the second factor, courts look to see whether barring judicial review would "prevent[ ] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *see also Hidalgo,* 344 F.3d at 1259 (applying the *Weinberger* description of the purpose of exhaustion in the FOIA context).

If the agency fails to answer the request within 20 days, FOIA deems the requester

---

5. Specifically, the court has stated that
[t]he FOIA expressly requires that an agency receiving a request for information (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal ... If the denial of the request is upheld on appeal, the agency must notify the person making such request of the provisions for judicial review of that determination ... As we have previously concluded, this statutory scheme requires each requestor to exhaust administrative remedies.
*Hidalgo,* 344 F.3d at 1259 (internal quotations and citations omitted).

to have constructively exhausted administrative remedies and permits immediate judicial review. 5 U.S.C. § 552(a)(6)(C); *Judicial Watch, Inc. v. Rossetti ("Judicial Watch I ")*, 326 F.3d 1309, 1310 (D.C.Cir. 2003) (citing *Oglesby*, 920 F.2d at 64–65). That said, "[i]f the agency responds to the request after the twenty-day statutory window, but before the requester files suit, the administrative exhaustion requirement still applies." *Judicial Watch I*, 326 F.3d at 1310. Moreover, courts have held that only a valid FOIA request can trigger an agency's FOIA obligations, and that "failure to file a perfected request therefore constitutes failure to exhaust administrative remedies." *Dale v. Internal Revenue Serv.*, 238 F.Supp.2d 99, 103 (D.D.C.2002) (citing 5 U.S.C. § 552(a)(3) and 26 C.F.R. § 601.702(c)(5)); *see also Judicial Watch I*, 326 F.3d at 1311–12 (basing its analysis on the defendant's argument that the plaintiff had not constructively exhausted because the non-conforming FOIA request could not be considered "received" and thus could not trigger the 20–day limit); *accord Church of Scientology v. Internal Revenue Serv.*, 792 F.2d 146, 150 (D.C.Cir. 1986) (noting that FOIA requires "requests [to] be made in accordance with published rules").

### 2. Adequacy of Agency Search

■ "A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia–Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C.Cir.1999). To prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C.Cir.1995) (internal quotations and citations omitted). An agency must search for documents in good faith, using

methods that are reasonably expected to produce the requested information. *Valencia–Lucena*, 180 F.3d at 326 (citing *Oglesby*, 920 F.2d at 68). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Oglesby*, 920 F.2d at 67 n. 13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C.Cir.1986)); *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C.1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Services, Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C.Cir. 1991); *Meeropol*, 790 F.2d at 952, 956. Nor need the agency produce a document where "the agency is no longer in possession of the document[ ] for a reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201.

■ Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby*, 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in, view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia–Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

■ As a general rule, "[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the

court is satisfied that no factual dispute remains." *Schrecker v. Dep't of Justice*, 217 F.Supp.2d 29, 35 (D.D.C.2002), *aff'd*, 349 F.3d 657 (D.C.Cir.2003); *see also Judicial Watch, Inc. v. Dep't of Justice ("Judicial Watch II")*, 185 F.Supp.2d 54, 65 (D.D.C.2002) (noting that "[d]iscovery is not favored in lawsuits under the FOIA"). Only if the agency has not undertaken an adequate search for responsive documents is discovery appropriate. *Schrecker*, 217 F.Supp.2d at 35. Discovery is not warranted "when it appears that discovery would only ... afford[ the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits." *Military Audit Project v. Casey*, 656 F.2d 724, 751–52 (D.C.Cir.1981) (internal quotations omitted); *see also Broaddrick v. Executive Office of President*, 139 F.Supp.2d 55, 63–64 (D.D.C.2001) (noting that the court may deny discovery when the plaintiff's efforts amount to a "bare hope of falling upon something that might impugn the affidavits"). Where an agency's affidavits regarding its search are sufficient, the judge has the discretion to forgo discovery. *Meeropol*, 790 F.2d at 960–61; *see also Schleeper v. Dep't of Justice*, 1999 WL 325515, at *1 (D.C.Cir.1999) (per curiam) (upholding lower court's denial of discovery). Even if an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits. *Judicial Watch II*, 185 F.Supp.2d at 65.

## C. The Court Grants the Defendant's Motion for Summary Judgment and Denies the Plaintiff's Motion for Discovery

In its motion for summary judgment, the defendant asserts that the court lacks jurisdiction over the plaintiff's initial request because the plaintiff failed to exhaust her administrative remedies. Def.'s Mot. at 5–13. As for the plaintiff's per-

fected request, the defendant asserts that it has complied fully with its obligations by undertaking searches for and producing all responsive documents. *Id.* at 13–15. In response, the plaintiff states that "[i]t appears that the IRS admittedly destroyed Plaintiff's administrative file two months *after* it answered the complaint Plaintiff had filed seeking to compel production of these very same records" and contending that "summary judgment cannot be granted in this matter until Plaintiff and the Court have had the opportunity to conduct a complete investigation into the facts and circumstances surrounding this highly unusual matter, which may amount to obstruction of justice." Pl.'s Opp'n at 2 (emphasis in original). Accordingly, the plaintiff requests discovery "into Defendant's search for documents and into why Plaintiff's administrative file was destroyed." *Id.* at 3.

### 1. The Plaintiff's Initial Request

 With regard to the plaintiff's initial request, the court declines review. *Wilbur*, 355 F.3d at 677; *Dale*, 238 F.Supp.2d at 103. The plaintiff states in passing that pursuant to FOIA's constructive-waiver provision, she has exhausted her administrative remedies (presumably because the IRS did not respond to her request within the requisite 20 days). Compl. ¶ 8 (citing 5 U.S.C. § 552(a)(6)(C)). But the plaintiff's failure to file a request that comports with agency FOIA regulations constitutes failure to exhaust administrative remedies. *Dale*, 238 F.Supp.2d at 103. Under the IRS FOIA regulations, a FOIA request must

(A) Be made in writing and signed by the individual making the request;

(B) State that it is made pursuant to the Freedom of Information Act, 5 U.S.C. 552, or regulations thereunder;

(C) Be addressed to and mailed to the office of the IRS official who is responsi-

ble for the control of the records requested[;]

(D) Reasonably describe the records[;]

(E) In the case of a request for records the disclosure of which is limited by statute or regulations [such as the Privacy Act or 26 U.S.C. § 6103], establish the identity and the right of the person making the request to the disclosure of the records[;]

(F) Set forth the address where the person making the request desires to be notified of the determination as to whether the request shall be granted;

(G) State whether the requester wishes to inspect the records or desires to have a copy made and furnished without first inspecting them;

(H) State the firm agreement of the requester to pay the fees for search, duplication, and review ultimately determined ... or ... place an upper limit for such fees that the requester is willing to pay, or request that such fees be reduced or waived and state the justification for such request; and

(I) Identify the category of the requester and, with the exception of "other requesters," state how the records shall be used[.]

26 C.F.R. § 601.702(c)(4)(i). Cross-referenced with the FOIA regulations are the IRS confidentiality statutes and regulations, which require a taxpayer seeking disclosure of her return to a third party to submit a separate written document, signed and dated by the taxpayer, that indicates -

(i) The taxpayer's taxpayer identity information[;]

(ii) The identity of the person or persons to whom the disclosure is to be made;

(iii) The type of return (or specified portion of the return) or return information (and the particular data) that is to be disclosed; and

(iv) The taxable year or years covered by the return or return information.

*Id.* § 301.6103(c)–1; *see also* 26 U.S.C. 6103(c) (setting forth a general rule of confidentiality for tax returns and return information).

On its face, the plaintiff's initial request did not fulfill all of these basic requirements. Compl. Ex. 1. Most notably, the plaintiff's request did not include the necessary separate written document. *Id.;* 26 C.F.R. § 301.6103(c)–1. Nor did it state the plaintiff's firm agreement to pay for search and duplication fees, place a ceiling on such fees, or request a fee waiver.[6] Compl. Ex. 1; 26 C.F.R. § 601.702(c)(4)(H). Both the IRS regulations and the IRS response letter made clear that unless the plaintiff's request met the stated requirements, the defendant could not process the plaintiff's request. 26 C.F.R. § 601.702(c)(4)(i) (warning that "only requests for records which fully comply with the [regulatory] requirements ... can be processed"); Summerlin Decl. Ex. 2. Yet, inexplicably, the plaintiff chose not to take steps to correct these simple technical deficiencies. Instead, she waited several months and then proceeded directly to this court.[7] Given that the plaintiff failed

---

6. Although the IRS noted that the plaintiff's initial request was "too broad to meet the FOIA requirement to adequately describe the records sought," the circumstances of this case apparently nonetheless allowed the IRS to begin searching in 2001 for documents that might be responsive to a possible perfected FOIA request. Summerlin Decl. Ex. 2.

7. The plaintiff states that after she "did not receive any *documents* in response to her request," she filed suit. Pl.'s Opp'n at 1 (emphasis added). But the plaintiff fails to mention that she did receive a response in the form of a letter, and that this letter explained why the plaintiff didn't receive any documents: her initial request was facially invalid. Summerlin Decl. Ex. 2.

to perfect her initial request and judicial review of the request clearly would prematurely interfere with the agency process, the court declines to review the initial request. *Wilbur,* 355 F.3d at 677; *Dale,* 238 F.Supp.2d at 103; *accord Hidalgo,* 344 F.3d at 1259–60 (directing the district court to decline judicial review of a requester's premature appeal because his appeal did not serve the purposes of exhaustion). The court therefore grants the defendant's motion for summary judgment as to the plaintiff's initial request. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Diamond,* 43 F.3d at 1540.

### 2. The Plaintiff's Perfected Request

■ Although the plaintiff's perfected request presents a different factual situation, it once again does not achieve the plaintiff's desired outcome. Unlike the initial request, the perfected request appears to meet the IRS' FOIA requirements: it asked the IRS to search the IRS national headquarters, the Dallas regional office, the Dallas disclosure office, and the Austin service center for (1) all records relating to the plaintiff's tax audits, (2) all communications about the plaintiff among the four IRS offices and between the IRS and third parties, (3) all records regarding the "information item" that gave rise to the plaintiff's audit, and (4) a "transcript of account." Deamon Decl. Ex. 1; 26 C.F.R. § 601.702(c)(4)(i). It specified a time frame of 1992 to 2003, and requested a fee waiver or alternately a $250 limit on fees. *Id.* Finally, the perfected request satisfies the IRS' confidentiality requirements by including a separate written document providing the requisite taxpayer information and authorization. Deamon Decl. Ex. 1; 26 C.F.R. § 301.6103(c)–1.

Accordingly, the defendant does not challenge the validity of the perfected request, stating that the court has jurisdiction over that request. Def.'s Mot. at 13. Instead, it is the plaintiff who raises a challenge. Specifically, the plaintiff states that in December 2003, the defendant informed her that the IRS had selected her audit on the basis of an information item rather than by random selection. Pl.'s Opp'n at 1. Citing to an opinion-editorial by a commentator who alleges that the IRS regularly audited President Clinton's critics, the plaintiff characterizes her audit as "just one of a series of controversial and highly suspect audits of persons and organizations perceived to be adverse to or critical" of President Clinton. *Id.* at 1–2 & Ex. 3. Along those lines, the plaintiff contends that "[n]owhere in Defendant's motion or declarations does Defendant explain why it allowed Plaintiff's administrative file to be destroyed by NARA in August of 2001, more than one year after Plaintiff made her initial FOIA request and over four (4) months after Plaintiff filed [her] lawsuit." *Id.* at 2. Recognizing that discovery in FOIA cases is rare, the plaintiff nevertheless asks the court to permit discovery "to conduct a complete investigation into the facts and circumstances surrounding this highly unusual matter, which may amount to obstruction of justice." Pl.'s Opp'n at 2.

Charitably construing the plaintiff's request for discovery as a typical challenge to the adequacy of the defendant's searches, the court concludes that the IRS' searches were adequate because they were reasonably calculated to uncover all relevant documents. *Nation Magazine,* 71 F.3d at 890; *Schrecker,* 217 F.Supp.2d at 35. The IRS has presented several detailed affidavits indicating that it conducted multiple searches, using reasonable methods, of the locations and offices most likely to have maintained documents responsive to the plaintiff's perfected request—namely, the IRS offices in Washington, Dallas, and Austin, as well as the NARA FRCs in Fort Worth and Suitland. *Id.; Valencia–Lucena,* 180 F.3d at 326;

*see generally, e.g.,* Deamon, Baker, Williams, Cincotta Decls. Contrary to the plaintiff's assertions, the IRS affidavits also set forth "a reason that is not itself suspect"—the published document-retention schedules—for the destruction of the plaintiff's file. *SafeCard Servs.,* 926 F.2d at 1201; Def.'s Statement ¶¶ 20–21; Deamon Decl. ¶¶ 21 & Ex. 4.

The plaintiff offers no evidence to rebut the presumption of good faith accorded the IRS' affidavits.[8] *SafeCard Servs.,* 926 F.2d at 1200. Instead, the plaintiff points to the case of *Judicial Watch v. Department of Commerce,* and argues by analogy that discovery is appropriate in "unusual situations such as this." Pl.'s Opp'n at 2–3 (citing *Judicial Watch, Inc., v. Dep't of Commerce* ("*Judicial Watch III*"), 34 F.Supp.2d 28 (D.D.C.1998)). But here the plaintiff tries to fit a square peg into a round hole. As the plaintiff's counsel of course knows, *Judicial Watch* involved four years of extensive and egregious misconduct by the Department of Commerce—including the shredding and unexplained removals of requested documents—in response to various FOIA requests. *Judicial Watch III,* 34 F.Supp.2d at 30–40 (describing in detail the defendant's actions over the course of that "long and extraordinary litigation"). There may be some cases in which a defendant's actions resemble the defendant's

outrageous conduct in *Judicial Watch,* but this case clearly is not one of them.[9] Although the plaintiff tries to draw parallels between the two cases by implying that the IRS deliberately destroyed the plaintiff's file to avoid disclosure of the information item, the IRS affidavits provide a non-suspect reason for the destruction: the published document-retention schedules. *SafeCard Servs.,* 926 F.2d at 1201; *compare* Pl.'s Opp'n at 2 *with* Def.'s Statement ¶¶ 16–17, 20 *and* Deamon Decl. Ex. 4. Accordingly, the court concludes that the IRS' searches, as demonstrated by its affidavits, were adequate. *Meeropol,* 790 F.2d at 960–61; *Schleeper,* 1999 WL 325515, at *1.

 It is apparent to the court, however, that the plaintiff's challenge is not about the adequacy of the IRS' searches. On their face, the plaintiff's submissions make clear that her ultimate objective is to investigate the IRS' motives in selecting her for audit. *E.g.,* Pl.'s Opp'n at 2–3 (asserting that the plaintiff needs the opportunity to conduct "a complete investigation into the facts and circumstances of this highly unusual matter" and find out "why Plaintiff's administrative file was destroyed" given that it "likely would have contained additional information on how Plaintiff was selected for an audit") & Ex. 3 (opining that "the IRS has audited a mathematically improbable series of [Pres-

---

8. To the extent that the plaintiff offers the opinion-editorial to rebut the affidavits' presumption, the court notes that this evidence does not address the adequacy of the searches at issue here and therefore cannot justify discovery. Pl.'s Opp'n Ex. 3; *accord W. Journalism Ctr. v. Internal Revenue Serv.,* 2003 WL 21254986, at *2 (D.D.C. Mar. 4, 2003) (denying discovery because the plaintiffs' evidence focused not on the search at issue, but on the defendant's alleged history of noncompliance with other FOIA requests).

9. So unreasonable and unlawful was the Department's search in *Judicial Watch* that the

court faced the "unprecedented situation in which the defendant ... moved for entry of judgment *against itself* [while] the plaintiff, Judicial Watch, [] vehemently *opposed* the motion." *Judicial Watch III,* 34 F.Supp.2d at 29–30 (emphasis in original). The court ultimately denied the defendant's motion "because the record of misconduct in th[e] case [was] so egregious and so extensive that merely granting the [Department's] motion and ordering a new search would fail to hold the agency fully accountable for the serious violations that it appears to have deliberately committed." *Id.* at 30.

ident Clinton's] critics"). But granting the plaintiff's motion on that basis would impermissibly expand the limited scope of FOIA discovery. As the D.C. Circuit recently noted, the purpose of FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society." *United We Stand Am., Inc. v. Internal Revenue Serv.*, 2004 WL 404130, at *1 (D.C.Cir. Mar.5, 2004) (quoting *Nat'l Labor Rel. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978)). Toward that end, the statute's "fundamental principle ... is public access to government documents." *Valencia–Lucena*, 180 F.3d at 325. Here, in response to the plaintiff's request, the IRS searched relevant locations within the agency and provided her access to the responsive documents in its possession. Although the plaintiff may be unhappy with the search results, she cannot use FOIA discovery to conduct an investigation into the IRS' rationale for her audit. *Accord, e.g., Williams v. Fed. Bureau of Investigation*, 1991 WL 163757, at *3 (D.D.C. Aug. 6, 1991) (concluding that the plaintiff was not entitled to discovery "to unearth details about the FBI's investigation" of the plaintiff and his organization because an agency's investigatory rationale is not the proper subject of FOIA discovery requests).

Accordingly, because the defendant has demonstrated that its searches were reasonably calculated to uncover responsive documents, and because the court cannot expand FOIA discovery to suit the plaintiff's investigatory objectives, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for discovery with regard to the plaintiff's perfected request. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Diamond*, 43 F.3d at 1540; *Nation Magazine*, 71 F.3d at 890; *Schrecker*, 217 F.Supp.2d at 35; *Williams*, 1991 WL 163757, at *3.

No doubt the court's disposition of this case leaves the plaintiff disappointed and dissatisfied. Yet the record shows that the actions of the. plaintiff (or her counsel) virtually preordained this outcome. To recap, more than eight years after her 1992 audit, the plaintiff filed an error-ridden FOIA request. Despite the opportunity to correct these errors at very little trouble or expense, she waited several months and then filed suit in federal court. After being instructed by this court to resolve the procedural difficulties stymieing her initial request, she finally submitted a perfected request. Meanwhile, of course, Rome burned: the federal document-retention machinery lumbered forward on schedule, and the plaintiff's file was destroyed. Had the plaintiff taken the minor steps necessary to perfect her request in 2000, she might now have in her hands the very documents that could have proved or disproved her theories about the IRS' motivations for the plaintiff's audit. This irony is not lost on the court, which had to allocate precious resources to this case.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for discovery. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 11th day of March, 2004.