**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 22, 2005**

**PATRICK FISHER**
**Clerk**

FOREST GUARDIANS, a non-profit
New Mexico corporation,

      Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
THE INTERIOR; BUREAU OF LAND
MANAGEMENT,

      Defendants-Appellees.

and

NEW MEXICO PUBLIC LANDS
COUNCIL, a non-profit organization
on behalf of their respective members;
NEW MEXICO CATTLE GROWERS
ASSOCIATION, a non-profit
organization on behalf of its members,

      Defendants-Intervenors.

No. 04-2098

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-02-1003 JB/WDS)**

Richard J. Mietz, Santa Fe, New Mexico, for Plaintiff-Appellant.

Robert D. Kamenshine, Appellate Staff, Civil Division, Department of Justice, Washington, D.C. (Peter D. Keisler, Assistant Attorney General, Robert G. McCampbell, United States Attorney, Leonard Schaitman, Appellate Staff, Civil Division, Department of Justice, Washington, D.C., with him on the brief), for Defendants-Appellees.

––––––––––––––––

Before **BRISCOE**, **McKAY**, and **MURPHY**, Circuit Judges.

––––––––––––––––

**MURPHY**, Circuit Judge.

––––––––––––––––

## I.    INTRODUCTION

Plaintiff-appellant Forest Guardians sought to obtain information and a waiver of all search and copying fees from the Bureau of Land Management ("BLM") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  After the BLM refused to release the information and denied the fee waiver, Forest Guardians sued the BLM in federal district court.[1]  The district court granted Forest Guardians' revised request for certain redacted documents but denied the requested fee waiver.  Forest Guardians has appealed, challenging the denial of the fee waiver.[2]  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court

[1]The district court allowed the New Mexico Public Lands Council and New Mexico Cattle Growers' Association to intervene as defendants on behalf of their members who pledged their BLM grazing permits as collateral for loans.

[2]Neither the BLM nor the intervenors appeal that portion of the district court's order requiring the BLM to produce the redacted documents.

**reverses** and **remands** with instructions to grant Forest Guardians' request for a fee waiver under the FOIA.

## II.    BACKGROUND

Forest Guardians is a New Mexico nonprofit organization that seeks to increase public awareness of land management issues confronting federal agencies with responsibility over public land, water, and fish and wildlife habitats. Forest Guardians' mission is to acquire, compile, and analyze information and data regarding natural resources on federal public lands in the western United States, and federal activities and federally permitted activities on those lands. As part of this mission, Forest Guardians disseminates the information it obtains to its members, the general public, and to public officials.

The BLM operates within the United States Department of the Interior ("DOI"). The BLM administers public lands throughout the United States which includes issuing permits authorizing livestock grazing on certain public lands. *See* 43 U.S.C. §§ 315, 315a, 315b; 43 C.F.R. § 4100.0-5 (defining grazing permit). In these permits, the BLM sets the number of cattle that can graze on specific land areas. *See* 43 C.F.R. § 4100.0-5. Ranchers often use the BLM grazing permits as collateral, along with the value of the base property,[3] when

---

[3]Base property is defined as "[l]and that has the capability to produce crops or forage that can be used to support authorized livestock for a specified period of (continued...)

seeking to obtain loans from various financial institutions. The greater the number of cattle the BLM allows to graze, the more valuable the particular grazing permit and, correspondingly, the greater the value of the collateral pledged to the lending institutions. Permit holders who obtain loans secured by federal grazing permits execute agreements with the lending institutions called lienholder agreements or collateral assignments. These agreements contain various information, including the name of the permit holder, the location of the relevant grazing allotment, the name of the lending institution, the amount of the loan, the date of the loan, payoff dates and amounts, and any additional pledged collateral. Typically, the lending institutions voluntarily submit these lienholder agreements to the BLM which maintains the records on file. The BLM notifies lienholders of record when the agency receives an application to transfer a grazing permit from one base property to another because the lender must consent to the transfer. *See id.* at § 4110.2-3(c). It is also the BLM's practice to notify

---

[3](...continued)
the year" or "water that is suitable for consumption by livestock and is available and accessible, to the authorized livestock when the public lands are used for livestock grazing." 43 C.F.R. § 4100.0-5. Land or water owned by a grazing permit applicant will be deemed base property if the land or water "is capable of serving as a base of operation for livestock use of public lands within a grazing district" or if "[i]t is contiguous land, or, when no applicant owns or controls contiguous land, noncontiguous land that is capable of being used in conjunction with a livestock operation which would utilize public lands outside a grazing district." *Id.* at § 4110.2-1(a)(1)–(2).

the lenders when the agency takes steps that might affect the utility or value of a grazing permit.

On July 13, 2000, Forest Guardians submitted FOIA requests to ten BLM state offices in the West.[4] Forest Guardians sought copies of the lienholder agreements on file with the BLM and other documents relating to the use of BLM grazing permits as collateral for private loans.[5] Forest Guardians' FOIA requests

---

[4]Substantially identical requests were submitted to the BLM offices in Arizona, California, Colorado, Idaho, Montana, New Mexico, Oregon, Nevada, Utah, and Wyoming.

[5]More specifically, Forest Guardians requested the following materials:

(a) Copies of all documents, which are "collateral assignments" of all grazing permits for all grazing allotments in the state. This includes, but is not limited to, any and all "notices of lienholder's interest," "promissory notes," or any and all other documents which refer to the use of a federal grazing permit as a lien or collateral security for a loan. In particular we are interested in the [sic] knowing the names of allotments, permit holders, names of lending institutions and the amount of money involved in each individual agreement.

(b) Any and all letters from financial/lending institutions concerning livestock grazing on BLM lands. In particular, we are interested in any letters from lending institutions, which address BLM management efforts to restore degraded land.

(c) Any and all letters from the BLM to financial/lending institutions concerning management of livestock grazing on public lands.

(d) Any and all BLM databases which identify which permits on which allotments are utilized as collateral. Any and all BLM memos, letters of communication which address the use of BLM grazing permits as collateral security for loans.

each asked for a waiver of any fees associated with processing the request. Ultimately, all of the BLM offices refused to provide the documents, claiming the information fell under Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6).[6] The BLM offices also denied the requested fee waiver, concluding that because the requested records related only to a private transaction between a permit holder and a financial lending institution, the records did not concern the operations or activities of the BLM. As a consequence, the BLM determined that the records were not likely to contribute to the public's understanding of the BLM's operations or activities, much less contribute significantly.

In response to the BLM's rejection, Forest Guardians filed an administrative appeal with the DOI, limited to the BLM's refusal to disclose the lienholder agreements and the denial of the fee waiver request. When the DOI failed to respond, Forest Guardians filed a complaint seeking declaratory and injunctive relief in United States District Court for the District of New Mexico.

Forest Guardians filed a motion for summary judgment. In its motion, Forest Guardians limited the scope of relief sought to (1) an identification (for each BLM field office) of the names of the financial institutions involved in the practice of lending using BLM grazing permits as collateral, and (2) aggregated

---

[6]This provision exempts an agency from providing "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

financial information (by field office) as to the total dollar amount of loans secured by BLM grazing permits. Forest Guardians emphasized that it did not believe any of the information contained in the lienholder agreements is exempt under the FOIA, but for purposes of the present litigation it elected to limit the scope of relief sought.

The district court granted in part and denied in part Forest Guardians' motion for summary judgment. The court concluded that the BLM failed to demonstrate that release of the redacted lienholder agreements sought by Forest Guardians would constitute a "clearly unwarranted invasion of personal privacy" so as to outweigh the legitimate public interest served by disclosure of the requested information. The court therefore ordered the BLM to redact any personal financial or other information from the requested lienholder agreements and to release, organized by field office, redacted copies of the lienholder agreements which disclose: (1) the identities of all institutional lenders using BLM grazing permits as collateral, and (2) the amount of each loan involved. The court then determined that the BLM properly denied Forest Guardians' request for a fee waiver. Although it recognized that the redacted lienholder agreements are related to the operations and activities of the BLM and likely to contribute to the public's understanding of the operations and activities of the BLM, the court determined that any such contribution would not be significant.

On appeal Forest Guardians argues that the district court erred in concluding that Forest Guardians failed to satisfy the criteria necessary to qualify for a FOIA fee waiver.[7]

## III.   STANDARD OF REVIEW

The grant or denial of summary judgment is reviewed *de novo* applying the same legal standard used by the district court. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  Judicial review of a FOIA fee waiver decision is *de novo* and limited to the record before the agency.  5 U.S.C. § 552(a)(4)(A)(vii).  The record before the agency consists of, *inter alia*, the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal.  The burden of demonstrating that the standard for obtaining a FOIA fee waiver is met rests with the requester.  *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

---

[7]The record indicates that to search, copy, redact personal information, list lending institutions, and aggregate loan amounts would cost approximately $88,000.  In a Fed. R. App. P. 28(j) letter submitted to this court, the BLM states that Forest Guardians would be assessed the search and copying costs, but not the redaction costs.  It is not clear from the record what portion of the $88,000 is related to redaction, but it appears that the total cost charged to Forest Guardians would be close to $88,000.

## IV.  DISCUSSION

### A. FOIA Fee Waiver Standard

Under the FOIA, government agencies are directed to provide documents for no charge or at a reduced rate "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii); *see also* 43 C.F.R. § 2.19 (setting out the same two-part test under DOI regulations).  Because the BLM has never claimed that the requested documents are in Forest Guardians' commercial interest, the resolution of this case turns on whether the information sought by Forest Guardians would contribute significantly to the public's understanding of the operations or activities of the BLM.

Fee waiver requests must be made with "reasonable specificity" and contain more than "conclusory allegations."  *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quotations omitted).  Legislative history shows that the FOIA fee waiver provision "'is to be liberally construed in favor of waivers for noncommercial requesters.'"  *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. S14,298 (Sept. 30, 1986) (statement of Sen. Leahy)); *see also Judicial Watch, Inc.*, 326 F.3d at 1312 (agreeing with liberal construction).  Despite this "liberal

construction," noncommercial public interest groups must still satisfy the statutory standard to obtain a fee waiver. *McClellan Ecological Seepage Situation*, 835 F.2d at 1284.

**B. Application of the Standard**

*1. Operations or Activities of the Government*

Although the redacted lienholder agreements derive from a private transaction, the BLM directly facilitates the transaction by keeping the agreements on file and by notifying the lender institutions of proposed permit transfers and any agency action that might affect the value of the permit. As the district court noted, "public funds and resources are used to facilitate the practice of accommodating financial institutions who make private loans using the privilege to graze on public lands as collateral." Dist. Ct. Order at 37. The requested records therefore have a direct connection to the operations and activities of the BLM.

Forest Guardians also asserted that the lienholder agreements, although recording a private business transaction, indirectly pertain to the land management policy of the BLM by shedding light on the potential influence private groups have over this policy. More specifically, Forest Guardians believes that the large financial stake that lending institutions have in the value of grazing permits may create substantial economic and political pressure on the

BLM to maintain high levels of grazing. Materials submitted to the BLM by Forest Guardians described the activities of the BLM related to the issuance of grazing permits and provided information on the extent of the financial institutions' involvement in the collateralization of grazing permits. *See, e.g.*, Appellant's App. at 43-55.[8] By its very nature, the influence private groups may have over the BLM's land management policy is not likely to be out in the open and to require Forest Guardians to provide more concrete factual support for its assertions would be setting the bar too high. *Cf. Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 17 (1974) (purpose of the FOIA). By submitting documentation demonstrating the BLM's direct facilitation of the collateralization of grazing permits and supporting the possible influence of private groups on the BLM's decision-making process, Forest Guardians has shown that the requested records relate to the operations or activities of the BLM.

---

[8]This information was contained in an amicus brief filed by the State Bank of Southern Utah in support of Public Lands Council's attempt to seek Supreme Court review in *Public Lands Council v. Babbitt*, 167 F.3d 1287 (10th Cir.), *cert. granted*, 528 U.S. 926 (1999), *and aff'd*, 529 U.S. 728 (2000), which discusses the use of grazing permits as collateral and its importance to the banking industry in the western United States. In its brief, the bank asserted, among other things, that financial institutions hold an estimated $10 billion in loans and related credit transactions to the public land ranching industry, with the grazing preference rights alone worth approximately $1 billion.

*2. Contributing to the Public's Understanding*

FOIA fee waivers are limited to disclosures that enlighten more than just the individual requester but will contribute to the general public's understanding of the government's operations or activities. To clarify the second part of the fee waiver test, DOI regulations direct requesters to address the following criteria:

> (i) How are the contents of the records you are seeking meaningfully informative on the Department's or a bureau's operations and activities? Is there a logical connection between the content of the records and the operations or activities you are interested in?
> (ii) Other than enhancing your knowledge, how will disclosure of the requested records contribute to the understanding of the public at large or a reasonably broad audience of persons interested in the subject?
> (iii) Your identity, vocation, qualifications, and expertise regarding the requested information (whether you are affiliated with a newspaper, college or university, have previously published articles, books, etc.) may be relevant factors. However, merely stating that you are going to write a book, research a particular subject, or perform doctoral dissertation work, is insufficient, without demonstrating how you plan to disclose the information in a manner which will be informative to a reasonably broad audience of persons interested in the subject.
> (iv) Do you have the ability and intention to disseminate the information to the general public or a reasonably broad audience of persons interested in the subject?
> > (A) How and to whom do you intend to disseminate the information?
> > (B) How do you plan to use the information to contribute to public understanding of the Government's operations or activities?

43 C.F.R. Part 2, App. D (b)(2)(i)–(iv).

In the materials submitted to the BLM, Forest Guardians asserted that the requested records provide important information related to the BLM's facilitation of the collateralization of grazing permits and may show how, if at all, the BLM's land management policy is influenced by particular special interest groups. The use of public funds to facilitate the collateralization of grazing permits on public land is certainly important to the public's understanding of the BLM. An understanding of how the BLM makes policy decisions, including the influence of any outside groups on this process, is also important to the public's understanding of the BLM. *Cf. Judicial Watch, Inc.*, 326 F.3d at 1313-14 (noting that question of whether documents related to IRS commissioner's possible conflict of interest contribute to public's understanding of IRS operations does not depend on whether, in fact, the commissioner had a conflict of interest). The redacted records sought by Forest Guardians reveal the names of the particular lending institutions, the total dollar amount of loans secured by grazing permits, and the BLM field office to which such permits are attached. The records will therefore inform the public of the extent of the BLM's facilitation of the collateralization of grazing permits by way of the BLM's administrative policies and regulations. Additionally, by identifying particular lenders and revealing the monetary and geographical scope of the collateralization program, the records arguably

elucidate the decision-making process of the BLM related to its land management policy.

In its fee waiver request Forest Guardians explained the organization's mission and goals. Forest Guardians also provided a detailed explanation of the means by which it communicates information to the public and how it planned on disseminating the requested records. *See* 43 C.F.R. Part 2, App. D (b)(2)(iv)(A)–(B). Among other things, Forest Guardians "publishes an online newsletter, which is e-mailed to more than 2,500 people" and stated that it "intend[s] to establish an interactive grazing web site" with the information obtained from the BLM. By demonstrating that the records are meaningfully informative to the general public and how it will disseminate such information, Forest Guardians has shown that the requested information is likely to contribute to the public's understanding of the BLM's operations and activities.

*3. Significance of the Contribution*

A fee waiver is not appropriate unless the information obtained under the FOIA "is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). With regard to this part of the fee waiver test, DOI regulations direct requesters to address the following:

(i) Is the information being disclosed new?

(ii) Does the information being disclosed confirm or clarify data which has been released previously?

(iii) How will disclosure increase the level of public understanding of the operations or activities of the Department or a bureau that existed prior to disclosure?

(iv) Is the information already publicly available? If the Government previously has published the information you are seeking or it is routinely available to the public in a library, reading room, through the Internet, or as part of the administrative record for a particular issue (e.g., the listing of the spotted owl as an endangered species), it is less likely that there will be a significant contribution from release.

43 C.F.R. Part 2, App. D (b)(3)(i)–(iv).

To the extent the information concerns the existence of the BLM's policy of allowing the collateralization of grazing permits, it is not new. *See id.* at Part 2, App. D (b)(3)(i). The materials submitted by Forest Guardians in its initial fee waiver request and subsequent administrative appeal demonstrate that the existence of the program is relatively well-known. The requested records, however, concern the scope of the program, the extent of public lands attached to the collateralized grazing permits, and the identities of the financial institutions involved. This information not only confirms previously released information on the existence of the collateralization program, but clarifies its scope. *See id.* at Part 2, App. D (b)(3)(ii).

Forest Guardians explained that it hopes to inform the public about the extent of the program and the possible influence of the lending industry on the

BLM's land management policies.[9] The requested records are likely to increase the public's understanding by revealing the monetary scope of the collateralization, identifying the specific financial lending institutions involved, and associating the collateralized grazing permits with particular land areas. Knowing that the BLM permits the use of grazing permits as collateral is not the same as knowing the dollar amounts attached to particular areas of public land and the identities of the financial institutions holding the collateral. In addition to demonstrating the substantive impact of disclosing the requested records, Forest Guardians asserted that it plans to make the information widely and easily available, vastly increasing the number of people aware of the collateralization program itself and the BLM's facilitation of the program. Release of the records will therefore increase the public's understanding of the operations or activities of the BLM. *See id.* at Part 2, App. D (b)(3)(iii).

The district court correctly noted that the information sought by Forest Guardians is publicly available and this generally is a factor that weighs against

---

[9]The district court expressed concern that Forest Guardians' original FOIA request was more directly related to the operations and activities of the BLM because it sought to obtain correspondence between BLM and financial/lending institutions concerning grazing on BLM lands. Dist. Ct. Order. at 41. While this is no doubt true and it would be easier for Forest Guardians to demonstrate the significant contribution of the release of such correspondence, the existence of a prior, broader information request should not weigh against the granting of a fee waiver request. The request for a fee waiver is distinct from a FOIA records request and must be evaluated on its own merits.

granting a fee waiver. *See id.* at Part 2, App. D (b)(3)(iv). The lienholder agreements are not, however, "routinely available to the public in a library, reading room, through the Internet, or as part of the administrative record for a particular issue." *Id.* The information is instead before the public "in courthouses across the west, newspaper articles, and affidavits." Dist. Ct. Order at 41. The information, therefore, is publicly accessible in only the grossest sense. *See Campbell v. United States Dep't of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1999) ("[T]he mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions.").

While the requested records may be publicly available in piecemeal and hard-to-access form, Forest Guardians plans to broadly disseminate compiled information. In particular, Forest Guardians contends that it aims to place the information on the Internet, establishing "an interactive grazing web site in which members of the public will be able to click on regions of the West and obtain as much information as they are interested in about the status of ongoing livestock grazing on public lands." Appellant's App. at 59 (FOIA request letter). This type of accessibility is qualitatively different from and exponentially greater than the existing availability of the information sought by Forest Guardians. The DOI

regulations appear to contemplate this level of public availability. *See* 43 C.F.R. Part 2, App. D (b)(3)(iv) (asking whether information is "routinely available"). Thus, contrary to the ruling of the district court, the existing availability of the information does not weigh against granting Forest Guardians' request for a fee waiver.

Whether Forest Guardians has satisfied the third prong of the fee waiver standard is concededly a close question. Given that Congress intended courts to liberally construe the fee waiver requests of noncommercial entities, Forest Guardians should get the benefit of the doubt. *See McClellan Ecological Seepage Situation*, 835 F.2d at 1284. This court therefore concludes that Forest Guardians has established that the contribution of the requested documents to the public's understanding of the operations or activities of the BLM is likely to be significant.

## V.    CONCLUSION

For the reasons set out above, we **REVERSE** that part of the district court's judgment denying Forest Guardians' motion for summary judgment and **REMAND** with instructions to grant Forest Guardians' request for a fee waiver under the FOIA.