**Billy Ray DALE, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

United States District Court, District of Columbia.

Nov. 20, 2002.

Larry Elliot Klayman, Judicial Watch, Incorporated, Washington, DC, for Plaintiff.

Stuart David Gibson, Washington, DC, for defendant.

### MEMORANDUM OPINION

BATES, District Judge.

Plaintiff Billy Ray Dale ("Dale") brings this action against defendant Internal Revenue Service ("IRS") under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552. Dale asserts that he was subjected to retaliatory audits by the IRS during President Clinton's administration from January 20, 1993 through January 19, 2001, and seeks access to any documents in the possession of the IRS that he believes will establish the political nature of these actions. Compl. ¶ 6. The IRS moves to dismiss Dale's complaint for lack of subject

matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1), claiming that Dale failed to comply with certain administrative requirements of FOIA and the implementing IRS regulations.[1]

This case is a prime example of how the unwillingness of the parties and counsel to a lawsuit to work together in managing the case may lead to an unnecessary expenditure of time and effort by the parties and hence by the federal judiciary. In this case, the fault seems to lie primarily, although perhaps not exclusively, with the plaintiff, or more accurately with Judicial Watch, the public interest legal organization that represents plaintiff. Had Judicial Watch responded timely to defendant's communications and proposals, the issues now before the Court likely would have been resolved long ago, without requiring briefing and judicial attention, and perhaps plaintiff's FOIA request would already have been processed and documents produced. Unfortunately, that was not to be, and the Court must therefore deal with the parties' respective positions as they now stand, even though modest compromise would appear to have been much the preferable, and more efficient, option. Be that as it may, for the reasons stated below, the motion of defendant IRS to dismiss is granted.

## BACKGROUND

Dale filed his FOIA request with the IRS on July 13, 2000. Compl. ¶ 5; *see* Compl., Ex. 1 (letter from Dale to IRS dated July 13, 2000). In his request, Dale sought access to "[a]ny and all documents, including but not limited to files, that refer or relate in any way to Billy Ray Dale." *Id.* Dale stated that his request included *"all* Internal Revenue Service offices, depart-

ments, detachments, bureaus, operating locations, field offices, agencies, divisions, directorates, center headquarters, and/or other Internal Revenue Service organizations and entities." *Id.* Dale requested that the documents be sent to his attorney, Larry Klayman, General Counsel of Judicial Watch, a non-profit public interest law firm. Compl., Ex. 1.

Dale did not commit to pay the fees incurred in searching for and copying the responsive documents, nor did he request a waiver of those fees. The IRS received Dale's request on July 18, 2000, and on August 27, 2000, the IRS wrote back, informing Dale of several problems that needed to be corrected before the IRS could conduct a search. Compl. ¶ 7. The IRS letter stated in part:

> A request for "all records pertaining to you" is too broad to meet the FOIA requirement to adequately describe the records sought. Please provide some additional guidance on what information you are seeking, what Internal Revenue Service function might have documents responsive to your request, what types of issues are involved, what year or time frame might be appropriate to help us focus the search.

Answer, Ex. A (letter from Summerlin to Dale dated August 27, 2000). The IRS informed Dale that in order to bring his request into compliance with FOIA and applicable IRS regulations, he would have to: 1) provide specific authorization for the IRS to release his tax records to Judicial Watch, 2) make his request for disclosure in a separate document containing his identity information and the type of information to be disclosed, 3) reasonably describe the information requested and its

---

**1.** The IRS withdrew its argument that Dale failed to exhaust his administrative remedies when he did not file an administrative appeal from the IRS letter he received on August 27, 2000. *See* Notice of Withdrawal of Argument (August 10, 2001).

location within IRS with more specificity, and 4) make a firm commitment to pay the fees for search and duplication, or provide justification for waiving or reducing such fees. Answer, Ex. A pp. 1–2. The IRS provided Dale with Form 8821, a tax information authorization form that when properly completed would authorize release of Dale's IRS documents to Judicial Watch. *Id.* at p. 2.

Dale did not respond to the IRS letter. Eight months later, on April 24, 2001, claiming that he had "received no substantive response to his FOIA request from the IRS," Dale brought suit against the IRS. Compl. ¶ 7. On May 9, 2001, Judicial Watch's Klayman held a conference call with Department of Justice lawyers in an attempt to address the deficiencies in Dale's FOIA request, and the parties apparently agreed to take steps to avoid litigation. *Id.* As a result of the conference call, Klayman agreed to provide— within one week—a properly completed Form 8821, a request from Dale for a fee waiver and a firm commitment to pay such fees if the waiver were denied, and clarifications of Dale's search requests. The following day, counsel for the IRS memorialized this agreement in a three-page letter to Klayman. *See* Def. Reply, Ex. A (letter from Hubbert to Klayman dated May 10, 2001). However, Judicial Watch did not supply the agreed-upon information by May 16, 2001, and on June 5, 2001, the IRS sent Judicial Watch another letter seeking the information. *See* Def. Reply, Ex. B (letter from Hubbert to Klayman dated June 5, 2001). On June 11, 2001, Judicial Watch submitted a completed Form 8821 authorization and a lengthy justification of why Judicial Watch, as opposed to Dale (the plaintiff and FOIA requester), deserved a fee waiver. *See* Pl. Opp., Ex. 1 (letter from Farrell to Gibson dated June 11, 2001). Notwithstanding this communication, the IRS determined

that this additional information still did not comply with IRS and FOIA requirements or with the parties' May 9 agreement, and hence sent another letter on July 24, 2001, detailing the deficiencies in the information provided. *See* Def. Reply, Ex. C (letter from Gibson to Klayman dated July 24, 2001). That letter proposed a specific settlement of the case and stated that a motion to dismiss for lack of jurisdiction would be filed if the IRS did not hear from Judicial Watch by July 27, 2001. *Id.* at pp. 3–4. Having received no response, on August 2, 2001, the IRS filed its motion to dismiss, claiming that Dale had failed to comply with the administrative requirements of FOIA and had failed to exhaust his administrative remedies.

### DISCUSSION

 The Freedom of Information Act requires the requester to exhaust administrative remedies before filing suit. *Summers v. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C.Cir.1998); *Stebbins v. Nationwide Mutual Ins. Co.,* 757 F.2d 364, 366 (D.C.Cir.1985) ("[e]xhaustion of [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review"); *Judicial Watch, Inc. v. United States Naval Observatory,* 160 F.Supp.2d 111, 112 (D.D.C. 2001) ("It is well settled that full and timely exhaustion of administrative remedies is a prerequisite to judicial review under FOIA."). Failure to exhaust administrative remedies subjects a FOIA requester's suit to dismissal for lack of subject matter jurisdiction. *Dettmann v. Dep't of Justice,* 802 F.2d 1472, 1477 (D.C.Cir.1986); *Trueblood v. Dep't of Treasury,* 943 F.Supp. 64, 68–69 (D.D.C.1996). Compliance with both FOIA *and* agency requirements is necessary before the agency can release the requested documents. 5 U.S.C. § 552(a)(3); 26 C.F.R. § 601.702(c)(5).

Failure to comply with agency FOIA regulations amounts to a failure to exhaust administrative remedies, which warrants dismissal. *See Gillin v. IRS*, 980 F.2d 819 (1st Cir.1992); *Voinche v. Dep't of Air Force*, 983 F.2d 667, 669 n. 5 (5th Cir. 1993). An agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies. *See Crooker v. CIA*, 577 F.Supp. 1225 (D.D.C.1984); *Lilienthal v. Parks*, 574 F.Supp. 14, 17 (E.D.Ark.1983).

The requirements under FOIA are minimal: a request need only (i) "reasonably" describe the records sought and (ii) comply with any "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). Pursuant to the Act, the IRS has promulgated regulations that detail the rules and procedures that must be followed by persons requesting IRS records. *See* 5 U.S.C. § 552(a)(2). The IRS's obligation under FOIA begins only upon receipt of a valid request—that is, one that complies with all of the requirements set out in 26 C.F.R. § 601.702(c)(3)(i)-(viii). *See* 26 C.F.R. § 601.702(c)(5); *see also Brumley v. Dep't of Labor*, 767 F.2d 444, 445 (8th Cir.1985) (response by an agency is required when "any request ... is made in accordance with such rules") (quoting 5 U.S.C. § 552(a)(3)).

Here, the IRS claims that Dale has failed to exhaust his administrative remedies because he has not filed a proper request. Dale responds that in the May 9, 2001, conference call the parties agreed to "take steps to avoid having to litigate serious procedural questions involving subject matter jurisdiction." *See* Def. Reply, Ex. B (letter from Gibson to Klayman dated June 5, 2001). Dale maintains that he

complied with the requirements outlined in this agreement when Judicial Watch submitted its June 11, 2001, letter and Dale's Form 8821. Pl. Opp., Ex. A (letter from Farrell to Gibson). The IRS counters that the June 11, 2001, letter still failed in some respects to meet Dale's commitments in the agreement and under IRS regulations. Def. Reply at 4. In particular, the IRS contends that Dale did not "provide an adequate description of what records he seeks, for what types of taxes, for what years, and where the records might be located," and that he has failed to justify why he, as the actual requester of agency records concerning his own taxes—and not Judicial Watch—is entitled to a fee waiver. *Id.* at 5.[2]

## A. Failure to Reasonably Describe the Records Sought

Over the course of nearly a year, and after four letters from the IRS explaining what information it needed in order to conduct Dale's FOIA search, neither Dale nor Judicial Watch ever fully supplied to the IRS the information it contends is needed to comply with FOIA and IRS regulations. Under those regulations, the initial determination whether a particular request is valid is made solely by the Director of the Office of Disclosure or his delegate. 26 C.F.R. § 601.702(c)(7). The agency's regulations require that FOIA requests must be reasonably detailed:

> The request for records must describe the records in reasonably sufficient detail to enable the Internal Revenue Service employees who are familiar with the subject area of the request to locate the records without placing an unreasonable burden upon the Internal Revenue Service. While no specific formula for a

**2.** Dale's submission of a Form 8821 on June 11, 2001, has apparently resolved the question of authorization for the IRS to disclose Dale's tax records to Judicial Watch.

reasonable description of a record can be established, the requirement will generally be satisfied if the requester gives the name, subject matter, location, and years at issue, of the requested records. 26 C.F.R. § 601.702(c)(4)(i)(A).

Accordingly, the IRS is under no obligation to release records that have not been reasonably described. The linchpin inquiry is whether "the agency is able to determine precisely what records are being requested." *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C.Cir.1997) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C.Cir.1982)). A description "would be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Marks v. United States*, 578 F.2d 261, 263 (9th Cir.1978). Broad, sweeping requests lacking specificity are not sufficient. *American Fed. of Gov't Employees v. Dep't of Commerce*, 632 F.Supp. 1272, 1277 (D.D.C.1986).

Consequently, courts have found that FOIA requests for *all* documents concerning a requester are too broad. *See Mason v. Callaway*, 554 F.2d 129, 131 (4th Cir. 1977) (request for "all correspondence, documents, memoranda, tape recordings, notes, and any other material pertaining to the atrocities committed against plaintiffs, . . . including, but not limited to, the files of [various government offices] . . . typifies the lack of specificity that Congress sought to preclude in the requirement of 5 U.S.C. § 552(a)(3) that records sought be reasonably described"); *Hunt v. Commodity Futures Trading Comm'n*, 484 F.Supp. 47, 51 (D.D.C.1979) (request for all documents concerning requester too broad); *Keese v. United States*, 632 F.Supp. 85, 91 (S.D.Tex.1985) ("Requests for all documents containing a requester's name are not reasonably specific as required by the FOIA."). "[T]he rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives & Research Ctr. v. CIA*, 720 F.Supp. 217, 219 (D.D.C.1989).

Dale's FOIA request was for "*any* and *all* documents, including but not limited to files, that refer or relate in any way to Billy Ray Dale." Compl., Ex. 1 (letter from Dale to IRS dated July 13, 2000) (emphasis added). Such a request does not describe the records sought with "reasonably sufficient detail" in light of both statutory guidance and case law. Notwithstanding the IRS's initial August 27, 2000, letter explaining the additional information needed, Dale did not provide the necessary reasonably specific information to perfect his FOIA request. *See* 26 C.F.R. § 601.702(c)(4)(i)(A). Nor did he direct his search requests to specific regional offices from which he sought records. Dale's broad request would not permit an IRS employee to locate the records with a "reasonable amount of effort," since his FOIA request does not specify what records he seeks, for what years, and located at which office of the IRS. Absent some description of the actions the agency may have taken against him (investigation, audit, revocation of tax exempt status, etc.), the particular records sought, and any relevant dates and locations, agency employees would not know where to begin searching.[3] On its

---

**3.** In the May 9, 2001, conference call, Dale apparently agreed to submit separate requests directly to those IRS regional offices he wanted searched. Instead, Judicial Watch's June 11, 2001, letter stated that "we believe that the IRS regional service center[ ] [supporting

Dale's filing address] would contain additional responsive documents." Pl. Opp., Ex. A at p. 4. As the IRS repeatedly stated, it does not have a centralized filing system of tax documents, and its regulations require a FOIA requester to mail a FOIA request directly to

face, then, Dale's request was deficient, and no effort was made to cure the deficiencies.

Nonetheless, some semblance of common sense should prevail here. There is little doubt that, at least during the course of post-lawsuit negotiations with Dale and Judicial Watch, the IRS itself determined the thrust of Dale's FOIA request and what responsive records the IRS possessed. Indeed, in its July 24, 2001, letter, the IRS went so far as to state:

> Please note that, according to a check of the IRS's computerized database, Mr. Dale has not been the subject of any audit, collection or other IRS activity for any of the years 1988–2000, except for the two years 1991 and 1992. The IRS records show that Mr. Dale's 1991 and 1992 federal income tax returns were audited, and that the audit resulted in no change to the tax liabilities he reported.

Def. Reply, Ex. C at p. 3. On that basis, the IRS indicated it would "view favorably" a settlement whereby non-exempt records of those audit files, including the reasons for opening the audit, would be released to Dale. *Id.* Granted, Judicial Watch and Dale never responded to this or most other IRS communications, but the fact remains that at some point there was little continuing mystery about the scope and focus of Dale's request—i.e., the IRS itself supplied the necessary specificity of description to enable location of responsive records.

Hence, concluding at this point that this action should be dismissed because Dale did not reasonably describe the records sought in his request would run the risk of elevating form over substance given the

history of this matter. On the other hand, to do otherwise might reward Judicial Watch for its failure to engage in meaningful and reasonable discussions with the IRS in an attempt to resolve issues concerning the scope and specificity of Dale's request. And there is no doubt that the request on its face fails to comply with the requirements of FOIA and applicable IRS regulations, and that Dale and his counsel never undertook to correct that failure despite repeated IRS requests to do so. Simply put, Dale's search request amounted to an all-encompassing fishing expedition of files at IRS offices across the country, at taxpayer expense. Hence, Dale's FOIA request did not comply with IRS regulations either before or after he filed suit, and certainly did not comply with the parties' May 9, 2001, agreement. The complaint is thus fairly subject to dismissal on that basis notwithstanding the later success of the IRS search efforts, given that it remains uncertain to this date what precisely *the requester* seeks and from what locations within the IRS. There is, however, another independent basis upon which Dale's complaint must be dismissed.

**B. Failure to Commit to Pay Search and Duplication Fees or to Justify Waiver**

In addition to failing to reasonably describe the records he sought, Dale made no mention in his request of whether he intended to pay for the searches and copies, or whether he was seeking a fee waiver. Pursuant to IRS regulations, an initial FOIA request must:

> State the firm agreement of the requester to pay the fees for search and duplication ultimately determined in accor-

---

the specific district office to be searched or to the district office in which the requester resides. Def. Reply, Ex. C at p. 2 (Gibson letter to Klayman dated July 24, 2001); *see also* 26

C.F.R. § 601.702(c)(3)(iii) and (g) (listing regional offices and addresses). Neither Dale nor Judicial Watch ever complied with this requirement.

dance with paragraph (f) of this section, or request that such fees be reduced or waived and state the justification for such request.

26 C.F.R. § 601.702(c)(3)(viii).

■ To obtain a fee waiver, a requester seeking access to records must demonstrate that release of the information sought is in the public interest. *Oglesby v. Dep't of the Army*, 920 F.2d 57, 66 n. 11, 71 (D.C.Cir.1990). "[D]isclosure of the information is in the public interest [if] it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Thus, as this Circuit has noted, there is essentially a two-pronged test to determine whether a FOIA requester is entitled to a fee waiver. First, the requester must not have a commercial interest in the disclosure of the information sought. *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C.Cir.1988) (citing *MESS v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir.1987)). Second, the disclosure of the information must be "likely to contribute significantly to public understanding of the operations or activities of the government." *Larson*, 843 F.2d at 1483 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). Courts should liberally apply the fee waiver provision of the FOIA. *MESS*, 835 F.2d at 1284.

In Dale's initial FOIA request filed on July 13, 2000, he made no mention of any commitment—let alone a "firm commitment"—to pay for searches and copies, and he did not seek a fee waiver. Now, however, Dale contends that the June 11, 2001, letter to the IRS, which included Dale's completed Form 8821, contained sufficient justification to grant the fee

waiver to *Judicial Watch*. Pl. Opp. at pp. 1–2. The IRS responds that Dale must justify why he, as the FOIA requester— not Judicial Watch—is entitled to a fee waiver. The statutory language suggests that it is the requester, and not his or her legal representative, who must either firmly commit to payment of the fees or request a fee waiver. The applicable IRS FOIA regulation commands that the initial request for records must "state the firm commitment of the *requester* to pay the fees for search and duplication ultimately determined in accordance with paragraph (f) of this section, or request that such fees be reduced or waived and state the justification for such request." 26 C.F.R. § 601.702(c)(3) (viii) (emphasis added).

Judicial Watch has developed a cottage industry of FOIA litigation, and in fact has sought fee waivers in many cases (generally without success) when it was the requester of records under FOIA. *See, e.g., Judicial Watch v. Dep't of Energy*, 191 F.Supp.2d 138 (D.D.C.2002); *Judicial Watch v. FBI*, 190 F.Supp.2d 29 (D.D.C. 2002); *Judicial Watch v. Dep't of Justice*, 185 F.Supp.2d 54 (D.D.C.2002); *Judicial Watch v. Rossotti*, 2002 WL 535803 (D.D.C.2002); *Judicial Watch of Florida v. Dep't of Justice*, 159 F.Supp.2d 763 (D.D.C.2001); *Judicial Watch v. Dep't of Justice*, 133 F.Supp.2d 52 (D.D.C.2000).[4] Here, however, the parties do not dispute that Dale himself is the FOIA requester. The initial request of July 13, 2000, although typed on Judicial Watch stationery, was signed by Dale. Dale's completed Form 8821—submitted June 11, 2001, roughly a year after his initial request—is signed by Dale as the taxpayer. Indeed, the parties agreed in their May 9, 2001, conference call that Judicial Watch would

---

**4.** The Court does not need to reach in this case the issue whether Judicial Watch *itself* is

entitled to a fee waiver.

provide "a request from *each FOIA requester* for a fee waiver, and a firm commitment to pay such fees," as memorialized in the IRS letter to Klayman the following day. *See* Def. Reply, Ex. A (letter from Hubbert to Klayman dated May 10, 2001) (emphasis added).[5] This agreement was reiterated in letters from the IRS to Judicial Watch on June 5, 2001 and July 24, 2001, with no apparent objection from Judicial Watch. In its letter to Klayman on July 24, 2001, the IRS again explained that Dale, not Judicial Watch, must personally seek the fee waiver: "Your letter did not explain why Mr. Dale, as the requester, is entitled to a fee waiver." Def. Reply, Ex. C at p. 2. Finally, this case was filed by Dale, not Judicial Watch, as plaintiff, and asserts that Dale filed the FOIA request with the IRS. *See* Compl. ¶ 5. Judicial Watch is identified only as "Attorney for Plaintiff."

 A party's counsel is not the "requester" for purposes of a fee waiver. Judicial Watch has not cited, and this Court has not found, any authority suggesting otherwise. Therefore, Judicial Watch cannot prevail on its position that Dale is entitled to a fee waiver because his legal representative, Judicial Watch, may be so entitled. The insistence of Dale and Judicial Watch to seek a fee waiver only as to counsel in this case, not as to the plaintiff and FOIA requester, limits the issue before the Court. Accordingly, as there is no claim that Dale himself is entitled to a fee waiver, nor any evidence to support such a claim, the Court does not reach that question. The complaint is therefore subject to dismissal for the failure to claim, or establish, that plaintiff Dale is entitled to a fee waiver, or alternatively to commit to payment of search and duplication fees.

---

5. The May 9, 2001, conference call concerned separate FOIA requests from six of Judicial Watch's clients, of which Dale was one.

## CONCLUSION

Because Dale failed to comply with the administrative requirements of the Freedom of Information Act, he did not exhaust his administrative remedies. As the IRS repeatedly explained, he did not comply with the IRS requirement that the records sought be "reasonably" described. Moreover, as the actual requester of information, Dale did not make a "firm commitment" to pay the fees associated with his FOIA search, nor did he justify why the fees should be reduced or waived. For these reasons, the Court is without jurisdiction over this action. Accordingly, the IRS's motion to dismiss is granted.

A separate order will be issued on this date.