NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2021-0253

LAURA COLQUHOUN

v.

CITY OF NASHUA

Argued: January 27, 2022
Opinion Issued: October 26, 2022

Lehmann Major List, PLLC, of Concord (Richard J. Lehmann on the brief and orally), for the plaintiff.

Office of Corporation Counsel, of Nashua (Nicole M. Clay, Steven A. Bolton, and Celia K. Leonard on the memorandum of law, and Nicole M. Clay orally), for the defendant.

MACDONALD, C.J. The plaintiff, Laura Colquhoun, filed a complaint against the defendant, City of Nashua, after the City denied her Right-to-Know Law request for all email communications between two City employees during a specific two-month period. See RSA ch. 91-A (2013 & Supp. 2021). She argues that the Trial Court (Temple, J.) erred when, after finding that the City had violated the Right-to-Know Law, it denied her request for attorney's fees. We reverse and remand.

## I. Background

The following facts were found by the trial court or are otherwise undisputed. On March 11, 2021, the plaintiff submitted a Right-to-Know Law request seeking access to "all email communications between Ms. Kleiner [the City's Administrative Services Director] and Mr. Richard Vincent [the City's Chief of Assessing] for the period of January 1, 2021 to March 1, 2021." On March 18, 2021, the City denied the request, stating:

> This request for "all email" is overbroad and not reasonably described under RSA 91-A:4, IV. Therefore, this request is denied.
>
> Under RSA 33-A XXVII [sic] transitory correspondence is required to be retained only as needed for reference. The statute does not dictate the manner in which it shall be maintained. As such, each individual sender or recipient of transitory correspondence is free to retain, in whatever manner they see fit, any correspondence they need for as long or as short a period as they require for reference. With this in mind, any request for just "emails" does not describe governmental records in a manner that allows them to be reasonably identified or searched for.
>
> Further, RSA 33-A, does not mandate a particular method or manner for retention of any correspondence, but rather a schedule for disposition and retention. With this in mind, even under the assumption that a particular email is subsumed within the definition of "correspondence," such an email is not required to be maintained in any specific manner or file location, regardless of its individual retention timeline. Therefore, even under the assumption that an email was retained under RSA 33-A:3-a, XXV through XXVII, the bare description of "emails" fails to constitute a reasonable description of a governmental record.

The plaintiff then filed this lawsuit on March 25, 2021.

The City filed an answer dated March 31, 2021. In its answer, the City asserted that a search of the email folders located on the computers of both named individuals was "likely to produce hundreds of pages of email communication between the two of them, the vast majority of them being duplicated at least once." The City further explained that: (1) Vincent had begun employment with the City on approximately January 1, 2021; (2) Kleiner was his immediate supervisor; and (3) the Assessing Department "was in the midst of several projects which would have caused much communication between the two." Appended to the City's answer was a new letter from the City to the plaintiff dated March 31, 2021, which addressed her original March 11, 2021 request. In this letter, the City reported that it had "searched its

2

readily available files and found approximately 547 email messages, equivalent to roughly 937 printed pages, sent by and between Kim Kleiner and Rick Vincent during the period of January 1, 2021, to March 1, 2021," and that each page "will require individual review for redaction or exemption in order to protect private and confidential information." Citing the need for this detailed review and other pending Right-to-Know requests and departmental obligations, the City advised that it would provide a response or update to the plaintiff's original request by April 27, 2021.

The trial court held a hearing on the complaint on April 5, 2021. The arguments advanced by the parties are summarized in the trial court's order. The plaintiff argued that her "request was sufficiently described to allow the City to locate the requested documents." The City disagreed, asserting that "emails that may be responsive to the request could be found in any of the approximately 29,000 files related to individual parcels assessed by the Department." The City also argued "as a general matter, that Right-to-Know requests for 'any and all' documents are overbroad."

The trial court first addressed whether the plaintiff's request "reasonably described" the governmental records sought. See RSA 91-A:4, IV (Supp. 2021). RSA 91-A:4, IV(a) provides:

> Each public body or agency shall, upon request for any governmental record reasonably described, make available for inspection and copying any such governmental record within its files when such records are immediately available for such release.

The trial court found that we have "never defined the term 'reasonably described' as used in RSA 91-A:4, IV." Accordingly, the court "look[ed] to other jurisdictions construing similar statutes for guidance, including federal interpretations of the federal Freedom of Information Act." See, e.g., Censabella v. Hillsborough Cnty. Attorney, 171 N.H. 424, 426 (2018). Consistent with our case law, the trial court stated that it would construe the term in a manner that would provide the greatest information pursuant to both statutory and constitutional objectives. See id.

After reviewing federal case law that interpreted the Freedom of Information Act (FOIA), the court, relying upon American Oversight v. U.S. Environmental Protection Agency, observed as a preliminary matter that "whether a request is reasonably described is 'highly context-specific.'" Am. Oversight v. U.S. Envtl. Prot. Agency, 386 F. Supp. 3d 1, 15 (D.D.C. 2019). The court ruled that a Right-to-Know request must not only be specific enough for the public body to identify the actual records that are sought, but also it must not require an unreasonably burdensome search. In so ruling, the court again relied upon federal case law interpreting FOIA.

The trial court then addressed the City's argument that the plaintiff's request was not reasonably described because it asked for all email communications. The court noted that the City, in advancing this argument, had relied upon an order issued by the same trial court in January 2021 in a separate case. See Ortolano v. City of Nashua, No. 2020-CV-00133, at 4 n.2 (N.H. Super. Ct., Hills Cnty.-S. Dist. Jan. 12, 2021) (Temple, J.). The trial court found Ortolano inapposite, however, observing that, in Ortolano, the Right-to-Know request sought "all communications" between the Assessing Department and KRT Appraisal that "relate to" a certain topic, and did not identify a specific time frame. In contrast, the trial court found that, in the case now before us, the plaintiff had limited both the time frame and the scope of her request, seeking a specific type of communication (emails) between two identified persons (Kleiner and Vincent) over a finite time frame (January 1 to March 1, 2021).

The trial court rejected the City's argument that the plaintiff's request was "not reasonably described because the request would be extremely burdensome and therefore the request should be deemed overbroad," finding that "it seeks a clearly delineated group of documents. The City even states that the burden comes not from the request itself but from its method of organizing its records."

The trial court also rejected the City's assertion that, because "it is unlikely that 'all email communications' between these two individuals would be captured since it is likely that many such communications would have been removed from the email program," the request was overbroad. The trial court found that "the mere possibility that the City may not locate and produce all responsive documents does not render the request overbroad."

The court ordered the parties "to meet and confer within fourteen days and engage in a good faith effort to narrow and focus requests for the benefit of both the City and the requester." (Citations and quotations omitted.) The court concluded by ordering the City "to conduct a reasonable search for responsive records in accordance with its burden under the Right-to-Know law."

The trial court denied the plaintiff's request for attorney's fees, explaining that it could not find that the City knew or should have known that its conduct violated the Right-to-Know Law. The plaintiff then filed this appeal but did not provide a transcript of the April 5, 2021 hearing. We observe that the case was submitted to this court on January 27, 2022, at the conclusion of oral argument. On March 8, 2022, the plaintiff submitted a letter to the court that addressed statements made by counsel for the City at oral argument. Attached to the letter were transcripts of two hearings held in the superior court. In response, the City filed a motion to strike and a motion to clarify. No leave

4

having been granted, we decline to consider these post-argument submissions. See Sup. Ct. R. 16(7).

## II. Analysis

The sole issue before us is whether the trial court erred by denying the plaintiff's request for attorney's fees. RSA 91-A:8, I (2013) provides:

> If any public body or public agency or officer, employee, or other official thereof, violates any provisions of this chapter, such public body or public agency shall be liable for reasonable attorney's fees and costs incurred in a lawsuit under this chapter, provided that the court finds that such lawsuit was necessary in order to enforce compliance with the provisions of this chapter or to address a purposeful violation of this chapter. Fees shall not be awarded unless the court finds that the public body, public agency, or person knew or should have known that the conduct engaged in was in violation of this chapter or if the parties, by agreement, provide that no such fees shall be paid.

This statute provides that fees shall be awarded if the trial court finds that the lawsuit was necessary to make the requested information available and that the public body knew or should have known that its conduct violated the statute. ATV Watch v. N.H. Dep't of Trans., 161 N.H. 746, 764 (2011); see RSA 91-A:8, I.

The trial court explained that it could not find that the City knew that it was violating the Right-to-Know Law when it denied the plaintiff's request because "the supreme court has never defined the limits of a reasonably described request." Therefore, the trial court ruled, it was not unreasonable for the City to rely on federal case law and a recent superior court order to conclude that the plaintiff's request was unreasonably burdensome and therefore not "reasonably described." Indeed, citing federal case law, the trial court ruled that the Right-to-Know Law did not obligate a public body to comply with requests that required either unreasonably burdensome searches or the location and review of "a vast quantity of material." See Am. Oversight, 386 F. Supp. 3d at 15.

We address at the outset the City's argument that the plaintiff's failure to provide us with a transcript of the hearing is fatal to her appellate challenge. We disagree. Because the plaintiff has not provided a transcript, however, we will assume that the evidence presented to the trial court supports its findings, see Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004), and limit our review to whether the court's decision is consonant with applicable law, see Buatti v. Prentice, 162 N.H. 228, 229 (2011).

5

Although it is true that our case law has not specifically defined "reasonably described," we need not resolve that issue today to determine whether the City should have known that it was violating the Right-to-Know Law when it denied the plaintiff's request.

The City asserts that, given the absence of a specific definition in the statute or in our case law, it was reasonable to rely on case law from other jurisdictions and on an earlier ruling by the same trial court in a different case. The City contends that "[b]oth the trial court and the United States District Court for the District of Columbia place a negative connotation on the word *all*." Accordingly, it argues, because the plaintiff used the term "all" in her request for emails exchanged between the two individuals during the two-month period, the request was "simply too broad." However, the cited cases do not support such an indictment of the use of the word "all" and, having reviewed them, we disagree that the City's reliance was reasonable.

In Freedom Watch, Inc. v. Department of State, 925 F. Supp. 2d 55 (D.D.C. 2013), Freedom Watch sent FOIA requests to several federal agencies seeking "information about waivers the Department of State may have granted to citizens, corporations, or other countries to trade with Iran despite very tough sanctions against that country to prevent its development of nuclear missiles." The request identified 63 categories and sought:

> all correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things that refer or relate to [the 63 categories].

Freedom Watch, 925 F. Supp. 2d at 57.

The federal court granted the motions to dismiss filed by the several federal agency defendants after finding that the "requests failed to identify the documents sought with any modicum of specificity and were thus fatally overbroad and burdensome." Id. at 61.

The City also cites Dale v. Internal Revenue Service, 238 F. Supp. 2d 99 (D.D.C. 2002), to support its denial of the plaintiff's request. In Dale, the requester sought access to "[a]ny and all documents, including but not limited to files, that refer or relate in any way to Billy Ray Dale." Dale, 238 F. Supp. 2d at 101. Dale stated that his request included "all Internal Revenue Service offices, departments, detachments, bureaus, operating locations, field offices, agencies, divisions, directorates, center headquarters, and/or other Internal

Revenue Service organizations and entities." Id. The IRS did not deny the request but, rather, requested additional information:

> A request for "all records pertaining to you" is too broad to meet the FOIA requirement to adequately describe the records sought. Please provide some additional guidance on what information you are seeking, what Internal Revenue Service function might have documents responsive to your request, what types of issues are involved, what year or time frame might be appropriate to help us focus the search.

Id.

Dale did not respond to this request and eight months later filed suit against the IRS. Id. at 102. In a lengthy order, the trial court dismissed the suit, finding that Dale's undefined request "amounted to an all-encompassing fishing expedition of files at IRS offices across the country, at taxpayer expense." Id. at 105. "[H]is FOIA request does not specify what records he seeks, for what years, and located at which office of the IRS. Absent some description of the actions the agency may have taken against him (investigation, audit, revocation of tax exempt status, etc.), the particular records sought, and any relevant dates and locations, agency employees would not know where to begin searching." Id. at 104.

Neither Freedom Watch nor Dale supports the position advanced by the City on appeal. As the City concedes, "this Court need not define every term within RSA chapter 91-A in order for public agencies to comply with it." We have often stated that the Right-to-Know Law "helps further our State Constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted." Goode v. N.H. Office of Legislative Budget Ass't, 148 N.H. 551, 553 (2002); see N.H. CONST., pt. I, art. 8. And, we have consistently broadly construed provisions favoring disclosure and interpreted exemptions restrictively. N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. 95, 103 (2016).

In Freedom Watch, the "requests failed to identify the documents sought with any modicum of specificity and were thus fatally overbroad and burdensome." Freedom Watch, 925 F. Supp. 2d at 61. Similarly, in Dale, the court concluded that the request was so undefined that "agency employees would not know where to begin searching." Dale, 238 F. Supp. 2d at 104. Here, in contrast, the trial court found that the plaintiff had limited both the time frame and the scope of her request. Indeed, the court found that her request sought "a clearly delineated group of documents." Thus, neither Freedom Watch nor Dale supports the City's blanket refusal to provide any documents in response to the plaintiff's request.

Nor does the earlier order issued by the trial court in Ortolano cited by the City support the City's position. In that case, the trial court stated:

Indeed, courts tend to frown on requests for "all communications" because they do "not describe the records sought sufficiently to allow a professional employee familiar with the area in question to locate responsive records."

(Quoting Freedom Watch, 925 F. Supp. 2d at 62.) In Ortolano, the request did not identify a specific time frame nor limit the specific individuals between whom the requested communications took place, while here the request was limited both in time and to emails between two identified persons.

Citing federal case law, the City asserts in its memorandum of law that "[a] reasonably described request would be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." (Quotation omitted.) For the purposes of deciding this appeal, we will assume that this standard is applicable to requests made under the Right-to-Know Law. Cf. Censebella, 171 N.H. at 428 ("Notably, the FOIA derives from a legislative effort to promote government transparency, not from a constitutionally mandated public right to open government and accountability.").

Here, the record reveals that six days after the plaintiff filed her lawsuit, the City reported that it had "searched its readily available files and found approximately 547 email messages, equivalent to roughly 937 printed pages, sent by and between Kim Kleiner and Rick Vincent during the period of January 1, 2021, to March 1, 2021." (Emphasis added.) That the City was able to so quickly find 547 responsive documents by searching its readily available files after the plaintiff filed suit belies its claim that the plaintiff's description failed to describe the records sufficiently to allow a professional employee familiar with the area in question to locate responsive records.

As the City also acknowledges in its memorandum of law, whether a request reasonably describes the records sought is highly context-specific. Here, in its initial response to the plaintiff, the City relied upon provisions of RSA chapter 33-A to allege that each sender or recipient of transitory correspondence is free to retain correspondence as they see fit, and that emails are not required to be maintained in any specific manner or file location. This general recitation of the law governing disposition of municipal records fails to take into account the actual facts of this case — whatever the requirements of RSA chapter 33-A may be, the City's own actions demonstrate that the plaintiff's description was sufficient to permit the City to quickly find 547 responsive documents in readily available files once the plaintiff filed suit.

8

Thus, viewed in the context of the facts of this case, we conclude that the plaintiff's description reasonably described the records sought, and the City should have known that this was so.  See Am. Oversight, 386 F. Supp. 3d at 10 (public agency failed to explain why it "could not reasonably discern the records sought and process the request when [the plaintiff] sought all email records for a particular account across a two-week span"); see also Muckrock, LLC v. Central Intelligence Agency, 300 F. Supp. 3d 108, 136 (D.D.C. 2018) ("FOIA does not authorize the [public agency] to deny a FOIA email request categorically, simply and solely because the request does not reference the sender, recipient, subject, and time frame," noting that Congress intended the "reasonably described" language to be interpreted liberally, and that this standard "should not be used to obstruct public access to agency records" (quotation omitted)).

Next, the City argues that even if it had concluded that the plaintiff's request reasonably described the records sought, the City had reasonable grounds to deny the request "as the required search would be unreasonably burdensome."  We will assume, without deciding, that the City's denial of the request, which alleged that the request was overbroad and not reasonably described, encompasses the City's contention that the required search would be unreasonably burdensome.  The City argues that it reasonably denied the request on those grounds because responsive emails might have been stored "in a multitude of other locations."  In its answer to the plaintiff's complaint, the City alleged that obtaining all email communications between Kleiner and Vincent "would require a hand search of thousands of files containing tens of thousands of documents."

The City's argument is based upon its assumption that if it would be unduly burdensome for the City to search for and locate all of the requested documents, then it was entitled to refuse to undertake any search by simply denying the request as unduly burdensome.  Such a categorical denial is contrary to our case law.  As we explained in ATV Watch v. New Hampshire Department of Transportation, an agency is not required to undertake an exhaustive search for requested documents.  Rather, the adequacy of an agency's search for documents is judged by a standard of reasonableness.  ATV Watch, 161 N.H. at 753.  We conclude that the City should have known, in light of our decision in ATV Watch, that it was required to undertake a reasonable search.  Thus, by denying the plaintiff's request in its entirety as unduly burdensome, the City should have known that it was asserting that any search would be unreasonable because any search would be unduly burdensome.  The facts of this case and our earlier cases demonstrate that the City should have known that such an assertion was not justified.  See, e.g., Green v. Sch. Admin. Unit #55, 168 N.H. 796, 802 (2016) (purpose of Right-to-Know Law is to improve public access to governmental records and provide "utmost information" to public about what its "government is up to").

9

As previously noted, the City acknowledges in its memorandum of law that whether a Right-to-Know request "reasonably describes" the records sought is highly context-specific. Yet it failed to consider, before issuing its original denial, that the plaintiff's limited request for email exchanged between two named individuals over a two-month period easily distinguished her request from "all-encompassing requests" that have been found in other contexts to be too broad. While it alleged in its denial that RSA chapter 33-A did not require that the emails be kept in any specific manner or file location, the facts demonstrate that at least 547 responsive emails were located in readily available files. Its assertion that fulfilling the plaintiff's request may have required a hand search of thousands of files does not obviate its responsibility to conduct a reasonable search — as the legislature has observed: "Openness in the conduct of public business is essential to a democratic society." RSA 91-A:1 (2013).

Openness requires the ability of the public to obtain the "greatest possible access to the actions, discussions and records of all public bodies." RSA 91-A:1. Thus, even assuming the veracity of the City's assertion that an exhaustive search would have been unreasonably burdensome, it did not justify the City's blanket denial of the request. As the facts demonstrate, had the City undertaken a reasonable search, even one limited to "readily available files," it would have located 547 responsive documents, as it did within six days after the plaintiff filed her suit.

Because the record demonstrates that the City knew or should have known that its blanket denial violated the Right-to-Know Law, we conclude that the trial court erred when it denied the plaintiff's request for attorney's fees and costs. We have long recognized that the ability to obtain an award of attorney's fees in a Right-to-Know Law case "is critical to securing the rights guaranteed by the statute." Bradbury v. Shaw, 116 N.H. 388, 391 (1976). Although subsequent to our decision in Bradbury, the legislature revisited the fee provision and made clear that an award can only be ordered when a public body "knew or should have known" that its conduct "was in violation of this chapter," the principles underlying the availability of the award have not changed. To place a monetary value on the interests protected by the law will frequently be impossible. Id. "Without this provision, the statute would often be a dead letter, for the cost of enforcing compliance would generally exceed the value of the benefit gained." Id.; see also Heath Hooper & Charles N. David, A Tiger With No Teeth: The Case For Fee Shifting in State Public Records Law, 79 Mo. L. Rev. 949 (2014). We therefore reverse and remand for an award to the plaintiff of reasonable attorney's fees and costs.

We note that the legislature has recognized that some requests for documents may require additional time to address. See, e.g., RSA 91-A:4, IV(b) (Supp. 2021) (if public body is unable to make governmental record available for immediate inspection and copying, it "shall, within 5 business days of a

request" make it available, deny the request, or provide a written statement of time necessary to determine whether the request shall be granted or denied and reasons for the delay). Whether limitations should be imposed upon the scope of permissible Right-to-Know requests, or whether further accommodations should be made in the Right-to-Know Law to address potentially "unreasonably burdensome" requests, is an issue best addressed in the first instance by the legislature, with due consideration for the mandate of Part I, Article 8 of the New Hampshire Constitution.

Reversed and remanded.

HICKS and DONOVAN, JJ., concurred; BASSETT and HANTZ MARCONI, JJ., dissented.

BASSETT and HANTZ MARCONI, JJ., dissenting. We respectfully disagree with our colleagues that an award of attorney's fees is compelled in this case. The Right-to-Know Law is clear. Attorney's fees "shall not be awarded unless the court finds that the public body . . . knew or should have known that the conduct engaged in was in violation of this chapter." RSA 91-A:8, I (2013) (emphasis added). Because we cannot conclude that the trial court erred in finding that the City did not know — nor should it have known — that its conduct violated the Right-to-Know Law, we would affirm the considered decision of the trial court.

We agree with the majority that, in the absence of a transcript, we must assume that the evidence was sufficient to support the result reached by the trial court and that our review is limited to errors of law. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). We part company, however, when the majority concludes that the trial court erred when it ruled that the evidence did not support a finding that the City knew or should have known that its response violated the Right-to-Know Law.

The Right-to-Know Law requires that a public body shall, upon request for a "reasonably described" governmental record, make such record available for inspection and copying when the record is immediately available for such release. RSA 91-A:4, IV(a) (Supp. 2021). The request must reasonably describe the record sought before the public body is required to conduct a search for it. See id. As the trial court accurately observed, and as the majority acknowledges, we have not yet addressed the parameters of a "reasonably described" request. This is of particular significance in this case.

Here, the City received a request for "all email communications" between two city employees over a 60-day period without reference to subject matter or content. The City denied the request, stating that it was "overbroad and not reasonably described under RSA 91-A:4, IV." The City also explained, citing RSA 33-A:3-a, XXVII, that "transitory correspondence is . . . required to be

11

retained only as needed for reference" and "[w]ith this in mind, any request for just 'emails' does not describe governmental records in a manner that allows them to be reasonably identified or searched for." The City provided further explanation:

> RSA 33-A does not mandate a particular method or manner for retention of any correspondence, but rather a schedule for disposition and retention. . . . [E]ven under the assumption that a particular email is subsumed within the definition of "correspondence," such an email is not required to be maintained in any specific manner or file location. . . . Therefore, even under the assumption that an email was retained under RSA 33-A:3-a, XXV through XXVII, the bare description of "emails" fails to constitute a reasonable description of a governmental record.

Thus, the City not only denied the request as overbroad and not reasonably described, but it also explained its reasoning.

At the hearing on the plaintiff's complaint, the City explained the basis for its denial: (1) emails that might be "responsive to the request could be found in any of the approximately 29,000 files related to the individual parcels assessed by the Department"; and (2) several state and federal courts had construed similar laws and determined that requests for "any and all" documents are overbroad.

The trial court ruled that the City's duty to make governmental records available for inspection required first, as a threshold matter, that the request for inspection be "reasonably described." See RSA 91-A:4, IV(a). Although the court ultimately determined that the plaintiff's request had "reasonably described" the records sought, it ruled that the City did not know, nor should it have known, that the plaintiff's request was "reasonably described" at the time that the City received the request. In so ruling, the court cited the legislature's unsuccessful efforts in its 2020 session to define the term "reasonably described." The court reasoned that, since neither the legislature nor this court had ever defined the term, it was reasonable for the City to look to other courts for guidance when determining whether the plaintiff's request "reasonably described" the governmental records sought. Noting that the "reasonably described" determination is highly context-specific, the court observed that other courts had found a request for "all" emails that failed to identify a subject matter to be overbroad.

The trial court concluded that, given the unsettled state of the law, "it has not been shown that the City knew or should have known that the

12

plaintiff's request was reasonably described." Accordingly, the court found that the plaintiff was not entitled to an award of attorney's fees and costs. We agree with the trial court.

The majority's conclusion to the contrary rests in large part on its effort to distinguish several cases from other jurisdictions relied upon by the City when it concluded that the plaintiff's request was not "reasonably described." Even assuming that those cases can be distinguished from this case in certain respects, it does not necessarily follow that the City knew or should have known that the request in this case was reasonably described. The cases that the City relied upon merely provide guideposts as to the acceptable scope and time frame of a "reasonably described" request.

For example, in Freedom Watch, Inc. v. Department of State, 925 F. Supp. 2d 55, 61 (D.D.C. 2013), and Dale v. Internal Revenue Service, 238 F. Supp. 2d 99, 104 (D.D.C. 2002), the D.C. District Court concluded that the requests at issue were too broad in scope, in part, because they requested "all" documents of certain types. See Freedom Watch, 925 F. Supp. 2d at 62 (concluding that request for "all communications" between the Secretary of State and Secretary of the Treasury lacked necessary specificity because it lacked subject matter and temporal limitations); Dale, 238 F. Supp. 2d at 104 ("[R]equests for all documents concerning a requester are too broad."); see also Ortolano v. City of Nashua, No. 2020-CV-00133, at 4 n.2 (N.H. Super. Ct., Hills Cnty.-S. Dist. Jan. 12, 2021) (observing that courts "tend to frown on requests for 'all communications'" because they are too broad). Freedom Watch and Dale provide examples of requests that fall on the "too broad" end of the spectrum. That the scope of the request in this case is arguably less broad than the requests in those cases does not support the majority's conclusion that the City knew or should have known that this request satisfied the "reasonably described" standard.

Additionally, as to time frame, the trial court compared a case in which a request for emails sent and received by nine school board members over a 30-day period was deemed sufficiently described, see Easton Areas School Dist. v. Baxter, 35 A.3d 1259, 1260, 1265 (Pa. Commw. Ct. 2012), with a case in which a request was determined to be insufficiently specific, in part, because it sought all emails of a public official for a one-year period, see Penn. Dept. of Edu. v. Pittsburgh Post-Gaz., 119 A.3d 1121, 1126 (Pa. Commw. Ct. 2015). Although the 60-day time frame of the request at issue here certainly falls closer to the "reasonably described" end of the spectrum, reasonable minds could differ as to where the line should be drawn.

In our view, because the "reasonably described" inquiry is, as the trial court pointed out, "highly context-specific," the cases that the City relied upon merely provide examples of requests that fall within or outside of acceptable bounds. Those cases neither demonstrate a consensus nor dictate a specific

result under the facts of this case. Accordingly, given the highly context-specific nature of the inquiry, the lack of guidance from this court or the legislature, and the state of the case law in other jurisdictions, we cannot conclude that the City knew or should have known that the plaintiff's request was "reasonably described." See Ettinger v. Town of Madison Planning Bd., 162 N.H. 785, 792 (2011) (concluding that defendant should not have known that its conduct was unlawful in the absence of guidance from this court on a narrow legal issue); Goode v. N.H. Legislative Budget Assistant, 145 N.H. 451, 455 (2000) (concluding that defendant neither knew nor should have known it violated RSA chapter 91-A based, in part, on "the law in this area").

In reaching its conclusion, the majority also relies upon the fact that "six days after the plaintiff filed her lawsuit, the City reported that it had 'searched its readily available files and found approximately 547 email messages, equivalent to 937 printed pages, sent by and between [the two individuals] during [the requested period].'" Its reliance is misplaced. Hindsight is not the proper perspective to employ when determining whether the City is liable for attorney's fees. That the City subsequently identified 547 documents that were potentially responsive to the plaintiff's request does not support a finding that the record request was "reasonably described." Neither the City nor the trial court ever determined that the email messages were responsive — i.e., governmental records subject to RSA chapter 91-A. Rather, after the hearing, the trial court ordered the City to "conduct a reasonable search for responsive records in accordance with its burden under the Right-to-Know law," and ordered "the parties to meet and confer within fourteen days and engage in a good faith effort to narrow and focus requests for the benefit of both the [City] and the requester." (Quotation omitted.)

Finally, we believe that the majority errs when it minimizes the significance of the plaintiff's failure to provide us with a transcript of the hearing. As the majority acknowledges, without the transcript, we are obliged to assume the evidence presented to the trial court supports its findings. Bean, 151 N.H. at 250. Here, although the trial court ultimately determined that the precedent and rationale relied upon by the City did not support a finding that the plaintiff's request was not reasonably described, the court did not find that the City knew or should have known that the plaintiff's request for "all email communications" between two City employees, without more, was reasonably described. Without a transcript of the proceedings, and therefore, without knowledge of any proffers made by the City during the hearing, there is no logical way to reject the trial court's reasoning and conclusions.

It is clear that the trial court was called upon to decide previously unresolved legal issues related to what constitutes a "reasonably described" request. The lack of controlling precedent on that question dictates the answer to the question of whether the City knew or should have known that its denial of the plaintiff's request as not "reasonably described" violated the Right-to-

14

Know Law.  In order for the trial court to determine that the City "should have known" that the plaintiff's request was reasonably described, the law on that issue had to be clear.  It is not.

In light of the case law from other jurisdictions relied upon by the City for the proposition that an agency need not honor a request that seeks "all" of a category of information, or "all" information "relating" to a certain subject, as well as the absence of a decision by this court or a statutory definition establishing the limits of a reasonably described request, we find no legal error in the trial court's ruling.  That the trial court ultimately decided the substantive "reasonably described" issue in favor of the plaintiff does not mean that, at the time of its initial response, the City lacked a reasonable basis for believing that the court would rule otherwise.  Given the lack of a transcript and the unsettled state of the law, we would affirm the trial court's denial of the plaintiff's request for attorney's fees.